**PROTESTANTS AND OTHER AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE, etc., et al., Plaintiffs,**

v.

**UNITED STATES of America et al., Defendants.**

**No. 3303.**

United States District Court S. D. Ohio, W. D.

March 20, 1967.

Emanuel Nadlin, Dayton, Ohio, for plaintiffs.

Robert Draper, U. S. Atty., Roger Makley, Asst. U. S. Atty., Leslie A. Nicholson, Dept. of Justice, of counsel, for United States.

Wm. B. Saxbe, Atty. Gen., Charles S. Lopeman, Asst. Atty. Gen., for John D. Herbert, R. A. Horn and Jack E. Brown.

James W. Drake, City Atty., Dayton, Ohio, for defendant, Robert B. French, Supt. of Schools.

### ORDER

WEINMAN, Chief Judge.

This matter is before the Court upon motions of defendants to dismiss. The plaintiffs are a nonprofit corporation, Protestants and Other Americans United for Separation of Church and State, aka Americans United, and twenty-two named individuals some of whom are citizens of the State of Ohio and some of whom are citizens of other states. The named defendants are Harold Howe, II as Commissioner of Education of the United States of America; John D. Herbert as Treasurer, State of Ohio; R. A. Horn as Ohio Director, Division of Federal Assistance; Jack E. Brown as Ohio-Coordinator Title II, Ohio Department of Education; Robert B. French as Superintendent, Dayton City School District, Dayton, Ohio; John W. Gardner as Secretary of Department of Health, Education and Welfare of the United States.

In this suit, plaintiffs seek the following: 1) a determination that Title II of the Elementary and Secondary Education Act of 1965, Public Law 89-10, 20 U.S.C. §§ 821-827 (hereinafter sometimes referred to as the Act) is unconstitutional; 2) an injunction against the enforcement of the Act; 3) the return of $14,606.02 by the Treasurer of the State of Ohio and the Superintendent of the Dayton City School District to the United States Treasury (This is the sum which plaintiffs allege was distributed to twenty-two parochial schools in the Dayton City School District for the purchase of books and materials) and 4) damages on behalf of the individual plaintiffs, except Americans United, in the sum of $5,000,000.00.

Plaintiffs further ask for the convening of a three-judge court pursuant to Sections 2281 and 2284 of Title 28 U.S.C.

Title II of the Elementary and Secondary Education Act of 1965 is entitled "School Library Resources, Textbooks and Other Instructional Materials." This title authorizes the Commissioner of Education to make grants to states, which comply with certain requirements, for the acquisition of school library resources, textbooks and other printed and published instructional materials for the use of children and teachers in public and private elementary and secondary schools.

The question which the Court now considers is whether or not plaintiffs possess the requisite standing to maintain this action. All parties to the action recognize that Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.

Ed. 1078 (1923) is the leading case with respect to "standing;" the defendants argue that it is dispositive of this action whereas plaintiffs argue that it is distinguishable.

In Frothingham v. Mellon, supra, plaintiff, an individual sought to restrain enforcement of an Act of Congress commonly known as the Maternity Act. That Act authorized appropriations of public money to be apportioned among states which accepted and complied with its provisions for the purpose of cooperating with them to reduce maternal and infant mortality and protect the health of mothers and infants.[1] The Court noted that plaintiff's contention "though not clear, seems to be that the effect of the appropriation complained of will be to increase the burden of future taxation and thereby take her property without due course of law." The Court held that Mrs. Frothingham lacked standing and dismissed her action. In its opinion, at pages 487–489, 43 S.Ct. at page 601, a substantial portion of which is quoted below, the Supreme Court stated the relationship of a taxpayer of the United States to the Federal Government:

> " * * * His interest in the moneys of the Treasury—partly realized from taxation and partly from other sources —is shared with millions of others, is comparatively minute and indeterminable; and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating and uncertain, that no basis is afforded for an appeal to the preventive powers of a court of equity.

> "The administration of any statute, likely to produce additional taxation to be imposed upon a vast number of taxpayers, the extent of whose several

liability is indefinite and constantly changing, is essentially a matter of public and not of individual concern. If one taxpayer may champion and litigate such a cause, then every other taxpayer may do the same, not only in respect of the statute here under review, but also in respect of every other appropriation act and statute whose administration requires the outlay of public money, and whose validity may be questioned. The bare suggestion of such a result, with its attendant inconveniences, goes far to sustain the conclusion which we have reached, that a suit of this character cannot be maintained. * * *

"The functions of government under our system are apportioned. To the legislative department has been committed the duty of making laws; to the executive the duty of executing them; and to the judiciary the duty of interpreting and applying them in cases properly brought before the courts. The general rule is that neither department may invade the province of the other and neither may control, direct or restrain the action of the other. We are not now speaking of the merely ministerial duties of officials. 7 Wall. 347. *We have no power per se to review and annul acts of Congress on the ground that they are unconstitutional. That question may be considered only when the justification for some direct injury suffered or threatened, presenting a justifiable issue, is made to rest upon such an act.* Then the power exercised is that of ascertaining and declaring the law applicable to the controversy. It amounts to little more than the negative power to disregard an unconstitutional enactment, which otherwise would stand in the way of

---

1. Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597 (1923) was argued, considered and disposed of with Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). In that case the State of Massachusetts alleged that the Maternity Act was unconstitutional and that its rights and pow-

ers as a sovereign State and the rights of its citizens had been invaded. The Court held that the State of Massachusetts presented no justiciable controversy either on its own behalf or as the representative of its citizens. These two cases will sometimes hereinafter be referred to as the *Mellon* cases.

the enforcement of a legal right. *The party who invokes the power must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally.* If a case for preventive relief be presented the court enjoins, in effect, not the execution of the statute, but the acts of the official, the statute notwithstanding. Here the parties plaintiff have no such case. Looking through forms of words to the substance of their complaint, it is merely that officials of the executive department of the government are executing and will execute an act of Congress asserted to be unconstitutional; and this we are asked to prevent. To do so would be not to decide a judicial controversy, but to assume a position of authority over the governmental acts of another and coequal department, an authority which plainly we do not possess." [Emphasis added.]

To avoid the effect of Frothingham v. Mellon, supra, plaintiffs' attempt to characterize themselves as something other than mere "taxpayers." Counsel for plaintiff states:

"In the present case plaintiffs do not resist a tax or ask for the restraint of expenditures to save the taxpayer moneys. They seek the redress of a grievance, the use of public funds resources and personnel—both under color of state law and federal, by officials of the State of Ohio working with officials of the United States to establish a sectarian religion and inhibit the plaintiffs' freedom of religion."

Counsel further states:

"Plaintiffs have standing to bring this action in the federal court since they are being deprived of a civil right guaranteed to them by the First Amendment to the Constitution. This accrues to them as persons within the jurisdiction of the United States. The fact that they also happen to be citizens and taxpayers and that the most immediate injury is the indirect requirement that they subsidize churches by supplying libraries to church schools is only part of their claim to 'standing.' The plaintiffs have a constitutional right, personal in themselves, not to have to support, through their resources, the establishment of any church. They have a right to the free exercise of their own religion which is curtailed to the extent that the state with its resources aids other religions to which they do not subscribe and, in some cases, actually oppose. These rights are created by the religious clauses of the First Amendment and confirmed by the Fourteenth Amendment." [At pages 13 and 14 of plaintiffs' memorandum, filed February 14, 1967, in opposition to defendants' motion to dismiss.]

■ Regardless of the manner in which plaintiffs' attempt to characterize themselves and their claims, the basis of their amended complaint is the same as Mrs. Frothinghams—that federal funds are being expended in an unconstitutional manner and such expenditures deplete the federal treasury to the ultimate detriment of the individual plaintiffs and all other persons similarly situated. Accordingly, the Court finds that plaintiffs herein lack the requisite standing to maintain this action.[2]

For an analogous case, wherein the Court dismissed, for lack of standing, a suit challenging the constitutionality of the National Bank Act of 1864 and the Federal Reserve Act of 1913, see Horne v. Federal Reserve Bank of Minneapolis, 344 F.2d 725 (8 Cir. 1965). In that case, after noting that one may not challenge the constitutionality of a statute unless,

---

2. The amended complaint alleges no legal right of the organizational plaintiff, Protestants and Other Americans United for Separation of Church and State, which has been violated or threatened by defendants; therefore, it clearly has no standing to maintain this suit.

and until, and except in the respect that, he is directly and adversely affected thereby the Court stated, at page 728:

"As to the nature of 'direct injury * * * the Supreme Court, in Alabama Power Co. v. Ickes, supra, explained, 'The term "direct injury" is there (referring to Commonwealth of Massachusetts v. Mellon, supra) used in its legal sense, as meaning a wrong which directly results in the violation of a legal right.' 302 U.S. 464, 479, 58 S.Ct. 300, 303. In addition, cases are unanimous which point out that an injury to be justiciable must be peculiar to the particular plaintiff, and not one suffered by all similarly situated persons in common. Absent personal injury or damage, the plaintiffs here do not have the requisite standing to question the constitutionality of the above-referred-to statutes, or any other statutes, in the courts of the United States.

" * * * By plain mandate of the Supreme Court, federal taxpayers have no interest in the expenditure of tax funds as will give rise to a legal right to supervise expenditures therefrom through court action. Commonwealth of Massachusetts v. Mellon, supra. Any damage claimed to be suffered thereby is suffered in common with all other taxpayers, and simply will not suffice to establish requisite standing to sue * * *."

Since its decision in the Mellon cases the Supreme Court, on numerous occasions, has cited and relied upon the law as stated therein. See, for example, Cramp v. Board of Public Instruction of Orange County, 368 U.S. 278, 282–283, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961) and Poe v. Ullman, 367 U.S. 497, 503, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). This Court is, of course, aware of the fact that there has been some criticism of the *Mellon* cases. See Mr. Justice Douglas' concurring opinion in Public Affairs Press v. Rickover, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1961) at page 114 and the footnote on that same page. However,

since the Supreme Court has never reversed or repudiated its decision in those cases, the concepts of standing announced therein are the law of the land and if those concepts are to be changed, that change must be effected by the Supreme Court or the Congress.

It is to be noted that Congress itself was aware that individuals such as plaintiffs lacked standing to raise the question of constitutionality with respect to the Act in question. See 111 Cong.Rec. 7317–7318 (1965) wherein the following colloquy appears:

"MR. COOPER. * * *

"However, I direct my questions to the specific issue of constitutionality, for it must be met. I believe the Senator will agree that the Mellon case would prohibit any taxpayer—using that term in the broad sense to include any agency or individual or entity—from bringing suit in Federal court to test the constitutionality of the pending bill.

"MR. MORSE. The Senator is correct. That is true in the Federal court, but it is not true in the State courts. The Maryland case is a State case, in which the judge held that the taxpayer had the right to raise the question. [Referring to The Horace Mann League v. Board of Public Works of Maryland, Circuit Court for Anne Arundel County, Equity No. 15,850, March 11, 1965; and see the subsequent appeal, 242 Md. 645 (1966).]

"MR. COOPER. My question was directed solely to the ability of a taxpayer to bring an action in the Federal court.

"MR. MORSE. Yes. He cannot do it under the Mellon case."

See also 111 Cong.Rec. p. 6131. And see, Senate Bill 3 (90th Cong., 1st Sess. (1967) which would permit challenge in the federal courts of loans or grants to church-related schools under nine Federal laws, one of which is the Act here

under consideration. Sec. 3(a) of the Bill provides:

"Any citizen of the United States upon whose taxable income there was imposed an income tax under section 1 of the Internal Revenue Code of 1954 for the last preceding calendar or taxable year and who has paid any part of such income tax and who deems a loan or grant made under any of the Acts enumerated in section 1 to be inconsistent with the provisions relating to religion in the first amendment to the Constitution, may bring a civil action in the nature of an action for a declaratory judgment against the Federal officer making such a loan or grant. *No additional showing of direct or indirect financial or other injury, actual or prospective, on the part of the plaintiff shall be required for the maintenance of any such action* * * *." [Emphasis Added.]

The Court has examined each case cited by plaintiffs in support of their claim of standing but finds that none of them is analogous to the instant action. In each of those cases the plaintiffs had standing because there was an alleged *immediate* and *direct* infringement of plaintiffs' religious freedom under the First Amendment. For example, School District of Abington Tp., Pa. v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) pertained to Bible reading in plaintiffs' classes; Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962) pertained to the reading, in plaintiffs' school, of a prayer composed by state officials; Zorach v. Clauson, 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952) pertained to a released-time program wherein children left the schools attended by plaintiffs to go to religious centers for religious instruction or devotional exercises and People of State of Ill. ex rel. McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1947) pertained to a released-time program wherein classrooms in the school attended by plaintiff were turned over to religious instructors. Plaintiffs' complaint in the instant action fails to show the immediate and direct infringement of rights as was done in the above cases.

Finally, although a three judge Court has been requested, it is now well settled that a single judge who is presented with an application for an injunction restraining enforcement or execution of an Act of Congress has the authority, without convening a three-judge Court, to determine whether the Court has jurisdiction and whether a substantial federal question is presented. Lion Manufacturing Corp. v. Kennedy, 117 U.S.App.D.C. 367, 330 F.2d 833 (D.C. Cir. 1964); Booker v. State of Tennessee Board of Education, 240 F.2d 689 (6 Cir. 1957); Bussie v. Long, 254 F.Supp. 797 (D.C.E.D.La.1966); Bryan v. Federal Open Market Committee, 235 F.Supp. 877 (D.C.Mont.1964).

In accordance with the foregoing plaintiffs' request for a three judge court is denied, each defendants' motion to dismiss is sustained and plaintiffs' complaint is dismissed.