## IRA C. OEHLER AND OTHERS v. CITY OF ST. PAUL AND OTHERS.[1]

May 18, 1928.

Nos. 26,651, 26,819

**General superintendent and engineer of water department of St. Paul is an employe within the city's classified service.**

1. The complaint states facts sufficient to constitute a cause of action. Judicial notice is taken of the home rule charter of the city of St. Paul. Civil service provisions therein are a matter of municipal concern and are as effective as would have been a legislative act. The position here involved is an employment and in the classified service. The question as to whether it was practicable to determine the merits and fitness of an applicant for the position by competitive examination is one of law to be eventually decided by the court.

**Taxpayers can sue.**

2. Plaintiffs had legal capacity to bring the action.

**Only one cause of action stated and prayer for relief is not part of it.**

3. But one cause of action was stated in the complaint. The prayer for relief is not a part of the cause of action and is not traversable. Demurrer will not lie because wrong relief is demanded in the complaint or greater relief than the facts warrant.

**Quo warranto will not lie against the superintendent.**

4. The position of general superintendent and engineer of the water department of the city of St. Paul is an employment and not an office. Quo warranto does not lie to determine the right to hold that position. The court had jurisdiction of the subject matter of the action.

Actions, 1 C. J. p. 1056 n. 68; p. 1060 n. 5.
Evidence, 23 C. J. p. 92 n. 53.
Municipal Corporations, 43 C. J. p. 177 n. 15; p. 858 n. 13; p. 896 n. 14½; p. 897 n. 21; 44 C. J. p. 1416 n. 70; p. 1428 n. 99.
Pleading, 31 Cyc. p. 110 n. 97; p. 202 n. 24; p. 298 n. 28.
Quo Warranto, 32 Cyc. p. 1422 n. 61.

Defendants appealed from an order of the district court for Ramsey county, Hanft, J. overruling their demurrer to the com-

[1]Reported in 219 N. W. 760.

plaint, the questions presented. having been certified as important and doubtful. Affirmed.

*Kenny & Gardner, Arthur A. Stewart* and *Eugene M. O'Neill,* for appellants.

*John P. Kyle* and *Richard E. Kyle,* for respondents.

HILTON, J.

Action by three taxpayers and voters of St. Paul against the city, four city officials and Clyde R. May. The main purpose of the suit is to prevent May from holding the position of general superintendent and engineer of the water department, to which position he was appointed without examination under the civil service rules. A demurrer to the complaint was overruled; the court gave the statutory certificate of doubt and importance, and this appeal was taken.

The complaint among other things alleges that the position in question is in the classified service and that a vacancy therein must be filled from an eligible list created by competitive examination; that no such list was created; that the civil service commissioner, with the consent of the mayor, arbitrarily and unlawfully suspended competition; that May was appointed under the pretended claim that competition was impracticable and that the position could best be filled otherwise by selection of someone of recognized attainments, and that it required an incumbent having peculiar and exceptional qualifications of a scientific, professional or expert character. The complaint, after alleging that it was not impracticable to have competition for the position, that it had been previously filled in that way and that the position was not one requiring such qualifications, states that May did not have the requisite attainments or the qualifications necessary to fill the position and that no satisfactory or any evidence was submitted to the officers warranting them in taking the action they did. It further charges that May was appointed by the commissioner of public utilities for reasons personal to himself or to the other officials without due or proper regard to the public interests; that their acts were wrongful, unlawful and fraudulent and in bad faith for the purpose of evading, subverting and circumventing the civil service

provisions of the charter and in the interests and for the benefit of May and for the purpose of specially favoring him to the injury, prejudice and detriment of the public service, the citizens and taxpayers, many of whom were better qualified than May to fill the position and were and are desirous of taking an examination therefor. Further details as to the complaint will appear in the opinion.

The prayer for relief, after alleging that plaintiffs have no adequate remedy at law and that public moneys will be unlawfully disbursed unless restrained by the court, asks for such restraint, for the annulment and setting aside of the appointment as unlawful and void, and a restraining of the public officials in a designated manner so as to accomplish the purpose sought by the action, as well as a recovery by plaintiffs for the benefit of the city of such moneys as may have been unlawfully paid to May, and for such other and further relief as may be proper.

The questions presented by the demurrer and here to be considered are: (1) Does the complaint state facts sufficient to constitute a cause of action? (2) Does it appear on the face of the complaint that the plaintiffs have no legal capacity to sue? (3) Does it appear on the face of the complaint that several causes of action are improperly united? and (4) Does it appear on the face of the complaint that the court has not jurisdiction over the subject of the action?

1. Does the complaint state facts sufficient to constitute a cause of action? We think it does. "A demurrer admits all material facts well pleaded, all the inferences of fact which may fairly be made therefrom and all necessary legal inferences which arise from the facts pleaded." Harriet State Bank v. Samels, 164 Minn. 265, 273, 204 N. W. 938. We take judicial notice of the home rule charter of the city of St. Paul. A. A. White Townsite Co. v. City of Moorhead, 120 Minn. 1, 138 N. W. 939. The complaint refers to ordinances adopted under said charter. The trial court refers particularly to certain of them containing civil service rules and regulations. The home rule charter of the city of St. Paul properly embraced civil service provisions as a matter of municipal concern.

They were as effective as would have been a legislative act. State ex rel. Hilton v. Essling, 157 Minn. 15, 20, 195 N. W. 539.

Section 100 of the charter provides that the unclassified service shall consist of:

"A.   All officers elected by the people.   B.   All heads of executive departments.   C.   A secretary for the mayor and one deputy for the head of each executive department.   D.   The superintendent and all teachers, instructors and principals of the public schools."

It further provides:

"The Classified Service shall include all other offices now existing, and all officers and employes holding places not excepted from said service.   It shall also include all other offices which may hereafter be created, unless expressly excepted therefrom."

Persons working in the water department of the city of St. Paul are city employes and subject to the civil service rules and regulations.   We cannot agree with appellants' contention that the general superintendent and engineer of the water department is the head of an executive department.   The position is not created or named as the head of an executive department by an ordinance and is not within the positions listed in the unclassified service.

It must therefore come within the classified service.   Although not necessarily determinative, it is significant that the civil service rules and classifications actually place the position in the classified service, giving it the highest grade therein (grade 13).   The position held by May in this service for four years immediately prior to the appointment complained of was that of transit man (grade 6), and for two years prior thereto he filled the lesser position of rodman or surveyor's assistant.   On March 12, 1927, he made an application for examination for the position of surveyor (grade 7) but was rejected for the reason "Lacks entrance Requirements."   The civil service regulations require that, in order to hold the position here involved, the applicant must be:   "(3) (a)   College graduate in Engineering, Business or Law, with ten years of engineering or executive experience;" and for experience must have had:

"(4) (a)    5 yrs. as Civil or Sanitary Engineer in positions of major responsibility.    General experience in Civil or Sanitary Engineering." The equivalents for such experience are: "High school graduate with ten years' experience in engineering to be equivalent of (3) (a).    Ten years as an executive officer or manager of a large business or enterprise in which applicant has demonstrated that he has ability to successfully manage a large business to be equivalent of (4)." Further, "Applicant must have good knowledge of modern water supply development and administration."

A long list is given of the duties incident to the position, including general supervision of operation and maintenance of the water bureau; planning future extensions and betterments to the system; supervision of preparation of plans and specifications and to direct all construction work done by the bureau; supervision of the purchasing of supplies and materials; acting as technical adviser to the commissioner of public utilities; direction of accounting procedure and plan of keeping records; responsibility for efficient pumping operations; responsibility for efficient purification and filtration of water; responsibility for upkeep and maintenance of all buildings, reservoirs, tanks, land, lakes, conduits, canals, mains, service connections, meters, equipment, and other waterworks appurtenances; and responsibility for supplies, stores and their accounting.

The complaint alleges that May had only a grade school education and that he claimed a one-year correspondence school course in engineering, and further alleges that he lacked practically all the necessary qualifications and experience.

Section 102 of the charter provides:

"In case of a vacancy in any office which requires peculiar or exceptional qualifications of a scientific, professional or expert character, and upon satisfactory evidence that competition is impracticable and that the office can best be filled by the selection of some. designated person of recognized attainments, the Commissioner may, with the written consent of the mayor, suspend competition, but no such suspension shall be general in its application to such office and all such cases of suspension shall be reported, together with the reasons therefor, in the annual reports of the Commissioner."

"Satisfactory evidence" is thus required before competition can be suspended. The complaint specifically alleges that:

"There was no satisfactory evidence or any evidence submitted to the said Civil Service Commissioner or to any other officer of said City that competition for said office was or is impracticable; on the contrary there was record evidence in the hands of said William F. Scott, as Civil Service Commissioner that competition for said office was practicable; nor was there any satisfactory evidence or any evidence that the said office could best be filled by the selection of some designated person of recognized attainments, nor is or was said office one which requires peculiar or special qualifications of a scientific, professional or expert character."

On August 1, 1927, a vacancy occurred in the position here being considered. Three days afterwards, the commissioner of public utilities attempted to fill the vacancy without a competitive examination. He made the following certificate after obtaining the consent of the civil service commissioner and the mayor:

"This position requires peculiar and exceptional qualifications of a scientific, professional and expert character, and in my judgment competition is impracticable because: On account of the resignation of J. W. Kelsey, and the large amount of work being done in this Department, necessitating constant supervision, I ask the appointment of this man whose qualifications peculiarly fit him for this position, in order to protect the best interests of the Water Department and the taxpayers of the city, and preventing the uncertainty of appointing a man and awaiting the result of an examination.

"I hereby certify that Clyde R. May is a person of recognized attainments in this particular kind of employment, and I recommend that the necessary consent be given for this appointment."

The appointment was not a provisional one or an emergency one made pending an examination. It was manifestly attempted under § 102 above quoted. This was a recognition by these defendants that the position was one in the classified service.

The complaint charges that the city official, ignoring a competitive examination, for reasons personal to himself, appointed May. The use in the certificate of the language of § 102 as a ground for such appointment (in the face of the allegations in the complaint, denying the truth of the statements therein) does not prevent an attack thereon in court. In other words, it is not conclusive. A bare statement that it is not practicable to fill a position by competitive examination is not determinative. "The question whether examinations for certain positions are practicable is one of law, when the character of the duties has been ascertained." Van Fleet v. Walsh, 122 Misc. 316, 202 N. Y. S. 745, 747. In the present case, the necessary qualifications of an applicant are specifically stated, as are also the duties of the position.

In People ex rel. Wilson v. Knox, 45 App. Div. 518, 61 N. Y. S. 472, it is stated: "Whether it is practicable to determine the merit and fitness of an applicant for the position by competitive examination, is a question of law to be decided by the court;" and the court held that it was practicable to determine such fact in that case, especially where it appeared that the position had been placed in the competitive class under former rules. See also People v. Errant, 229 Ill. 56, 82 N. E. 271.

In Chittenden v. Wurster, 14 App. Div. 483, 496, 43 N. Y. S. 1035, the court says: "When the particular character and functions of an office or position are ascertained, the question whether competitive examination for appointment to that place is practicable or not is a question determinable by the court, as matter of law, by the exercise of its judgment, and in the light not only of the proof but of common knowledge as applied to the subject-matter."

Attention has been called to § 26 of the civil service rules wherein it is provided that a vacancy in the classified service shall be filled, whenever possible, in the following order: 1. By reduction; 2. By transfer; 3. By reinstatement; 4. By promotion; 5. By original entrance. The first four have to do with those who are or have been in the public classified service, while the fifth, or last, relates to those never therein. This is indicative of the main thought of

the whole civil service system—promotion of those in the service when, by examination, they prove their worth. There could be no greater incentive for faithful service than this promise of promotion when deserved. The deterrent influence of a violation of the letter and spirit of the civil service plan will of necessity result in lessened efficiency in the public service.

2. Does it appear on the face of the complaint that the plaintiffs have no legal capacity to sue? Our answer is "No."

Relative to payment to those whose positions come within the classified service, § 95 of the charter provides that no claim for services shall be allowed unless the person rendering the same has his name enrolled with the civil service commission as in the employment of the city, and the class, grade, rate of compensation and department in which he is employed are specified on such payroll, except as in the charter otherwise provided.

Section 91 provides for the certifying to the comptroller and mayor, by the proper officials, the names of those entitled to compensation and the amount thereof.

Section 105 prohibits the payment by a treasurer or other public disbursing officer of the city of salaries or compensation for services to any person holding a position in the classified service unless the payroll or account of such salary or compensation shall bear the certificate of the commissioner. Then follows:

"Any taxpayer of the city may institute and maintain an action in the District Court to recover for the use of the city any sum or sums paid or disbursed contrary to the provisions of this section from the person or persons authorizing such payment, and may likewise institute and maintain an action to enjoin the Commissioner from attaching his certificate to a payroll or account for services rendered in violation of the provisions of this chapter or of the rules established thereunder."

There is here specific authority for an action by a taxpayer such as has been here instituted. Without the charter provisions, it is well settled that a taxpayer may, when the situation warrants, maintain an action to restrain unlawful disbursements of public

moneys; to recover for the use of the public subdivision entitled thereto money that has been illegally disbursed, as well as to restrain illegal action on the part of public officials.

3. Does the complaint state more than one cause of action? It does not. The action is based upon the alleged unlawful appointment of May to the position here involved. Its purpose is to correct the situation by preventing his retention of that position with the incidental results following the same, and to have it filled in a lawful manner. Even if the prayer for relief is broader than it should be, it is no part of the cause of action. It is not traversable. Upton v. Merriman, 122 Minn. 158, 142 N. W. 150, and cases cited; M. R. L. & M. Ry. Co. v. Brown, 99 Minn. 384, 109 N. W. 817. Demurrer will not lie because wrong relief is demanded in the complaint or greater relief than the alleged facts warrant. 5 Dunnell, Minn. Dig. (2 ed.) § 7555; Mannheimer v. Phinney, 167 Minn. 279, 209 N. W. 7; Mogren v. Finley, 112 Minn. 453, 128 N. W. 828.

4. Much discussion appeared in briefs and oral argument as to whether an occupant of the position here involved was an officer or an employe. The words "officer" and "employe" are used indiscriminately in the charter and ordinances.

"The words 'office' and 'officer' are terms of vague and variable import, the meaning of which necessarily varies with the connection in which they are used and, to determine it correctly in a particular instance, regard must be had to the intention of the statute and the subject-matter in reference to which the terms are used." State ex rel. Childs v. Kiichli, 53 Minn. 147, 155, 54 N. W. 1069, 19 L. R. A. 779.

An attempt here to make an application of technical definitions would serve no useful purpose. The position is a very important one; its classification at the head of the list so indicates. The importance of the duties of a position, the technical knowledge necessary, the previous experience in various lines are not criteria from which to determine whether such a position is an office or employment. Certain positions which without question are properly classified as employments require the performance of duties and

the rendition of service far transcending in importance those of positions that all will concede are offices.

A careful examination of the whole question, including the manner of appointment of the general superintendent and engineer of the water department, the nature of the duties he performs, the authority exercised over him, the limits of his responsibility, the applicable provisions of the charter and ordinances, convinces us that he is an employe.

Quo warranto does not lie to determine the right to hold the position here involved. The remedy by injunction was properly invoked. The court had jurisdiction of the subject matter of the action.

The beneficent purposes of the civil service plan in this country, wherever faithfully and intelligently administered, have been abundantly realized. Taking into consideration the strong and all inclusive allegations of the complaint, which we must here consider as true, the provisions of the charter, ordinances, and civil service rules, a situation exists requiring a trial on the merits.

The complaint states facts sufficient to constitute a cause of action; plaintiffs have legal capacity to sue; but one cause of action is stated in the complaint; the court has jurisdiction of the subject matter of the action.

Order affirmed.