344 F.2d 725
 W. Frank HORNE, Leo Zurn, Joan Van Poperin, William McNeely, P. A. Del Valle, John Doe and Richard Roe, Appellants,
v.
FEDERAL RESERVE BANK OF MINNEAPOLIS, First National Bank of St. Paul and Commercial State Bank, St. Paul, Northwestern National Bank, Minneapolis, Lyndon B. Johnson, President, United States, Douglas Dillon, Secretary, U. S. Treasury, and United States of America, Appellees.
 No. 17683.
 United States Court of Appeals Eighth Circuit.
 April 29, 1965.
 
 Alan S. Rosenthal, Attorney, Dept. of Justice, Washington, D. C., made argument for appellees, United States and other United States Officers, and filed brief with John W. Douglas, Asst. Atty. Gen., Miles W. Lord, U. S. Atty., Minneapolis, Minn., Richard S. Salzman, Atty., Dept. of Justice, Washington, D. C., and Roland Graham, Atty., Federal Reserve Bank of Minneapolis, Minneapolis, Minn.
 Albert D. Levin, St. Paul Minn., made argument for Commercial State Bank in St. Paul and filed brief. James A. Halls, of Faegre & Benson, Minneapolis, Minn., made argument for Northwestern Nat. Bank of Minneapolis and First Nat. Bank of St. Paul, appellees. On the brief were: James A. Halls and Lawrence C. Brown, of Faegre & Benson, Minneapolis, Minn., Frank Hammond and Richard H. Kyle, of Briggs & Morgan, St. Paul, Minn., Attorneys for First Nat. Bank of St. Paul.
 Before VOGEL, MATTHES and RIDGE, Circuit Judges.
 RIDGE, Circuit Judge.
 
 
 1
 Summary judgment was granted in this case on the basis that plaintiffs-appellants "* * * (did) not have the right and requisite standing to bring this action." The complaint filed by them in the court below alleged they are "residents, freeholders, voters, citizens and taxpayers of the United States" and bring this suit against appellees "* * on behalf of, in the interest of, and representing the people of the United States to enforce the primary right of the people of the United States to have the Constitution of the United States followed by their Government." Primarily, they alleged in their complaint the unconstitutionality of the National Bank Act of 1864, 12 U.S.C. § 21 et seq., and the Federal Reserve Act of 1913, 12 U.S.C. § 221 et seq.; and assert that the Federal Reserve Banks, as agencies of the United States, organized under those Acts of Congress, are not constitutionally established and, therefore, are without legal existence.
 
 
 2
 The gravamen of their complaint is that the Federal Reserve Banks, by issuing Federal Reserve Notes, are coining money in violation of the Constitution of the United States, Art. 1, Sec. 8, and that the Act, supra, purportedly authorizing such banks to do so is an unconstitutional delegation of legislative authority. They assert that all of the appellee banks "create" credit by making bookkeeping entries (which they say is an unlawful coining of money), and that they use this self-created credit to purchase U. S. Treasury securities, which are turned over to the banks without any consideration therefor and thus are worthless and void. The result of this, they claim, is that the taxpayers of the United States are greatly indebted to the banks for a debt in the neighborhood of 1500 billion dollars, and that the tax monies paid by all taxpayers to pay the principal and interest on these void securities is constitutionally wrong.
 
 
 3
 Individual actions are also asserted in the complaint by appellants Zurn and Van Poperin, each of whom claims to have presented Canadian currency to the Northwestern National Bank of Minneapolis; Zurn, 363, and Van Poperin, 287 Canadian dollars, and received in return $4.87 and $4.76 respectively in lawful money of the United States. Each of them claimed actual damages and $250,000.00 punitive damages, plus the value of their Canadian currency. Additional relief requested was: (1) that the National Bank Act and the Federal Reserve Act, both supra, be declared unconstitutional; (2) that the Government securities in the hands of the banks be declared void; (3) that the coining of money (asserted to constitute a nuisance) maintained by such banks be enjoined; (4) that the President, and the Secretary of the Treasury be enjoined from using any Government money to pay the principal and interest on these allegedly void securities; and (5) that the banks also be enjoined from making bookkeeping entries and further circulating private notes as money. As noted above, the District Court held that these appellants lacked standing to bring the instant suit and granted summary judgment in favor of appellees.
 
 
 4
 Casting aside the phantasmagoria of philosophical and political beliefs appellants assert, they claim standing as "individual citizens and taxpayers" to represent "the people of the United States" in this case to challenge the constitutionality of the two Acts of Congress, supra; and seek to restrain Government agencies, creatures of those Acts, from furter acting thereunder; and to have the federal courts restrain the Executive Branch of the Government from expending monies in further implementation of those Acts. Standing to so proceed is claimed as a result of the injury occurring to taxpayers generally from the use of tax funds for unconstitutional purposes, as well as the generalized, unspecific injury resulting to all citizens of the United States who have a right to a constitutional form of Government, based on the unctious political philosophy espoused by appellants. Thus, it is apparent that the primary determination appellants here seek is attempted to be related to the two statutes, supra, and all other questions presented by them depend on the determination made in respect to that matter.
 
 
 5
 Appellants' generalized complaints concerning current political philosophy in these United States, of course, are not before us. They must take that matter to some other forum. The Courts of the United States are without power to deal with any such questions. This Court, as all other Courts, has always rejected advocacy calculated to distract the Court's attention from the real and substantial questions involved in litigation because we are reminded by what Mr. Justice Holmes said, in Davis v. Mills, 194 U.S. 451, at 457, 24 S.Ct. 692, at 695, 48 L.Ed. 1067 (1904): "Constitutions (and laws) are intended to preserve practical and substantial rights, not to maintain theories." (Par. added.)
 
 
 6
 It has long been settled that federal courts have no power per se to review and pass upon the constitutionality of Acts of Congress. As early as Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), it was declared that we may only entertain matters which fall within the "case or controversy" limitation of judicial power as granted in Art. III, Sec. 2, of the Constitution of the United States. Following this reasoning it was early determined that a bare assertion questioning the constitutionality of an Act of Congress does not present the requisite of a "case or controversy" to any court. See, for example, Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911); Fairchild v. Hughes, 258 U.S. 126, 42 S.Ct. 274, 66 L.Ed. 499 (1922). The oft-quoted case of Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), which held that the interest of a federal taxpayer in the expenditure of tax funds was insufficient to give him standing to question the expenditure thereof, states the law in this regard quite succinctly:
 
 
 7
 "We have no power per se to review and annul acts of Congress on the ground that they are unconstitutional. * * * The party who invokes the power (negative power to disregard unconstitutional enactments) must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally." (Par. added.) 262 U.S. 488, 43 S.Ct. 601.
 
 
 8
 Hence a party who has not suffered a direct injury is said to lack standing to bring a civil action; that is, he does not have a "case or controversy" calling for relief by the courts. This concept has never been doubted; it has gained strength through the years as a necessary bulwark against encroachment on the apportionment of power as made by our Constitution. (cf.) Doremus v. Board of Education, etc., 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952); Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940); Tennessee Electric Power Co. v. T. V. A., 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939); Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938). We have heretofore stated our agreement with the above: "No one may challenge the constitutionality of a statute unless, and until, and except in the respect that, he is directly and adversely affected thereby." Allbaugh v. United States, 184 F.2d 109, 115 (8 Cir., 1950).
 
 
 9
 As to the nature of "direct injury" as used in the above-cited cases, the Supreme Court, in Alabama Power Co. v. Ickes, supra, explained, "The term `direct injury' is there (referring to Commonwealth of Massachusetts v. Mellon, supra) used in its legal sense, as meaning a wrong which directly results in the violation of a legal right." 302 U.S. 464, 479, 58 S.Ct. 300, 303. In addition, cases are unanimous which point out that an injury to be justiciable must be peculiar to the particular plaintiff, and not one suffered by all similarly situated persons in common. Absent personal injury or damage, the plaintiffs here do not have the requisite standing to question the constitutionality of the above-referred-to statutes, or any other statutes, in the courts of the United States.
 
 
 10
 Examining the present suit in light of the foregoing, it is readily apparent that the District Court was correct in holding that these appellants have no standing to bring this action. Aside from the two individual claims (which are discussed below) absolutely no "violation of a legal right" resident in appellants is here alleged as having occurred or as being about to occur. By plain mandate of the Supreme Court, federal taxpayers have no interest in the expenditure of tax funds as will give rise to a legal right to supervise expenditures therefrom through court action. Commonwealth of Massachusetts v. Mellon, supra. Any damage claimed to be suffered thereby is suffered in common with all other taxpayers, and simply will not suffice to establish requisite standing to sue.[1] Rejecting, as we do, any element of possible individual injury or damage established as to any of these appellants, we can only reject their general allegations of injury claimed to arise from the fact that the current political and economic systems of these United States are not in accord with their beliefs.
 
 
 11
 It is clear that such matter gives rise to no violation of a legal right, whatsoever. One of our most precious freedoms is the right to disagree, and this applies to the majority being in disagreement with the minority as well as vice versa. No legal right to appellants is violated because others do not share their beliefs. It is abundantly clear that the District Court was correct in holding that these appellants have no standing to maintain this action, and was correct in granting general summary judgment on that basis. We note that the District Court for the District of Montana, Billings Division, has recently dismissed a similar suit on the same grounds. Bryan v. Federal Open Market Committee, D. C., 235 F.Supp. 877 (12/7/64).
 
 
 12
 The question regarding appellants Zurn and Van Poperin superficially presents a somewhat different situation, but, legally considered, they also are without merit. Those appellants alleged that on November 5, 1963, they presented 363 and 287 Canadian dollars, respectively, to the Northwestern National Bank of Minneapolis, and in return received $4.87 and $4.76 therefor, "in lawful money of the United States," which they allege resulted in personal damage to them. Although such allegations appear to state individual damage and injury to those appellants, it is settled that summary judgment looks beyond pleading allegations to the true facts involved, in determining whether or not a genuine issue is present for determination by the trier of fact. (cf.) Marion County Cooperative Ass'n v. Carnation Co., 214 F.2d 557 (8 Cir., 1954).
 
 
 13
 The District Court, by its memorandum opinion in the case at bar (not published but appearing in the printed record before us) pointed out "that the difference between the small amount (above stated) was paid to (those) plaintiffs in Federal Reserve notes." We agree with the District Court, that the notes so received are legal tender by Act of Congress,[2] and thus, summary judgment was proper as to those appellants also. The rule is that where the defendant has moved for summary judgment, "* * * the burden rests on the opposite party to show that he has a plausible ground for the maintenance of the cause of action alleged in his complaint * * *." This, the appellants here have wholly failed to do, intentionally or not we need not determine. (cf.) Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co., 137 F.2d 871, 877 (6 Cir., 1943). There is no contention made in this case that the two appellants ante received anything less than the then current exchange rate applicable to all persons exchanging Canadian currency for American dollars on the above date. The fact that those appellants choose not to recognize Federal Reserve notes as legal tender is not a "plausible ground" for the maintenance of this lawsuit.
 
 
 14
 It is apparent from the record here that appellees were entitled to judgment as a matter of law; that no genuine issue as to any material fact here exists; and that appellants were not entitled to recovery under any discernible circumstances alleged. Rule 56(c), Federal Rules of Civil Procedure; Traylor v. Black, Sivalls & Bryson, Inc., 189 F.2d 213 (8 Cir., 1951).
 
 
 15
 Therefore, the judgment appealed from is in all respects
 
 
 16
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 In this connection appellants have called our attention to numerous Minnesota cases allowing municipal taxpayers to question the expenditure of municipal funds. Impliedly, at least, these cases hold that such taxpayers have the requisite standing to sue. Flynn v. Little Falls Electric & Water Co., 74 Minn. 180, 77 N.W. 38, 78 N.W. 106 (1898); Oehler v. City of St. Paul, 174 Minn. 410, 219 N.W. 760 (1928); Williams v. Klemmer, 177 Minn. 44, 224 N.W. 261 (1929); Phillips v. Brandt, 231 Minn. 423, 43 N.W.2d 285, 16 A.L.R.2d 1048 (1950). Such standing on the part of municipal taxpayers was early recognized by the Supreme Court in Crampton v. Zabriskie, 101 U.S. 601, 25 L.Ed. 1070 (1880), and has never been questioned. See Commonwealth of Massachusetts v. Mellon, supra, for a cogent discussion of the distinction between such taxpayers and federal taxpayers, so far as standing to sue is concerned. As pointed out there, this limited local standing has no parallel in the relationship of a federal taxpayer with the national Government. See also, Doremus v. Board of Education, etc., supra
 
 
 [2]
 31 U.S.C. § 462, "All coins and currencies of the United States (including Federal Reserve notes * * *) heretofore or hereafter coined or issued, shall be legal tender for all debts, public and private * * *." cf. Nortz v. United States, 294 U.S. 317, 55 S.Ct. 428, 79 L.Ed. 907 (1935); Perry v. United States, 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912 (1935)