WILLIAM W. McCUTCHEON AND OTHERS v.
CITY OF ST. PAUL.

216 N. W. 2d 137.

March 8, 1974—No. 44240.

*Kenneth J. Fitzpatrick,* City Attorney, and *Pierre N. Regnier,* Assistant City Attorney, for appellant.

*Frank Hammond, Richard H. Kyle,* and *Briggs & Morgan,* for respondents.

Heard by Knutson, C. J., and Otis, Peterson, Todd, and Scott, JJ., and considered and decided by the court.

PETERSON, JUSTICE.

Plaintiffs, William W. McCutcheon, Robert L. Pavlak, and Anthony L. Bennett, are police officers of the city of St. Paul, each employed in the classified civil service. Each is a member of the Minnesota Legislature, elected from the legislative district in which he resides in the County of Ramsey. The mayor of St. Paul, agreeing with the opinion of the St. Paul city attorney that service by a police officer in the state legislature is prohibited by art. 4, § 9, of the Minnesota Constitution, directed each of them to resign from one or the other of these positions. Disagreeing with that opinion, the District Court of Ramsey County, in this action for a declaratory judgment and injunctive relief, enjoined defendant city from dismissing plaintiffs from their employment as police officers if they did not resign their legislative offices. Defendant city appeals from the order granting the injunction.[1] We affirm.

The critical issue in this case is whether plaintiffs, or any of them, as municipal police officers hold an "office" within the meaning of this language of Minn. Const. art. 4, § 9:

"No senator or representative shall hold any other office under the authority of the United States or the State of Minnesota, except that of postmaster or of notary public. If elected or appointed to another office, a legislator may resign from the legislature by tendering his resignation to the governor."[2]

---

[1] A resolution adopted by the council of the city of St. Paul and re-adopted after overriding a veto by the mayor, urged the city attorney to withdraw the appeal in this court and to desist from any further action in this matter.

[2] Less important to consideration of this issue are these provisions of the state constitution:

Art. 3, § 1. "The powers of government shall be divided into three

The present police position of each plaintiff is: McCutcheon, Deputy Chief of Police (Civil Service Grade 45); Pavlak, Police Lieutenant (Grade 38); and Bennett, Patrolman (Grade 30).

"Office," as a term of specific constitutional significance—as distinguished from the more general term, "employment"—is not self-defining and has had seemingly inconsistent applications in the varying contexts in which the question has been raised. In State ex rel. Childs v. Sutton, 63 Minn. 147, 65 N. W. 262 (1895), this court implicitly held that the position of boiler inspector for the Fourth Congressional District was an "office" which, as "one of great public importance and responsibility," could not be occupied by a state legislator; but in Tillquist v. State Dept. of Labor & Industry, 216 Minn. 202, 12 N. W. 2d 512 (1943), this court held, in the context of the Workmen's Compensation Act, that a district boiler inspector was an "employee." In State v. Gardner, 88 Minn. 130, 92 N. W. 529 (1902), a policeman was held to be an "executive officer" within the meaning of a statute making it a crime for an executive officer to receive a bribe; but in State ex rel. City of Duluth v. District Court, 134

distinct departments—legislative, executive, and judicial; and no person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others, except in the instances expressly provided in this constitution."

Art. 4, § 3. "Each house shall be the judge of the election returns and eligibility of its own members * * *."

Art. 7, § 7. "Every person who by the provisions of this article shall be entitled to vote at any election and is twenty-one years of age shall be eligible to any office which now is, or hereafter shall be, elective by the people in the district wherein he shall have resided thirty days previous to such election, except as otherwise provided in this Constitution, or the Constitution and law of the United States."

The legislature, as the "judge of the * * * eligibility of its own members," (art. 4, § 3) has taken no action to exclude any of the plaintiffs from either the senate or the house. Action or inaction of the legislature, whether or not the matter was in issue there, is not finally determinative, for construction of the constitution is ultimately a judicial question. None of the parties suggests otherwise.

Minn. 26, 158 N. W. 790 (1916), it was held that a policeman was an "employee" for purposes of workmen's compensation.

Our decision in Oehler v. City of St. Paul, 174 Minn. 410, 418, 219 N. W. 760, 763 (1928), that the superintendent of the municipal waterworks was an employee, but not an officer, rejected resort to technical definitions as serving "no useful purpose," instead relying there upon an analysis of the method of appointment, the nature of the duties, the authority exercised over the holder of the position, and provisions of the ordinance and charter provisions applicable to the position.

The rationale of Oehler v. City of St. Paul, *supra,* and Tillquist v. State Dept. of Labor & Industry, *supra,* is the footing upon which we shall undertake to build. We said in Oehler (174 Minn. 418, 219 N. W. 763):

" 'The words "office" and "officer" are terms of vague and variable import, the meaning of which necessarily varies with the connection in which they are used and, to determine it correctly in a particular instance, regard must be had to the intention of the statute and the subject-matter in reference to which the terms are used.' State ex rel. Childs v. Kiichli, 53 Minn. 147, 155, 54 N. W. 1069, 19 L. R. A. 779."

We said in Tillquist (216 Minn. 204, 12 N. W. 2d 514):

"* * * There is a distinction between a public official and a public employe which is frequently difficult to trace. * * * The majority of decisions hold that a position is a public office when it is created by law with duties cast upon the incumbent which involve the exercise of some portion of the sovereign power and in the performance of which the public is concerned. Definitions of this nature seem rather general to be of any particular assistance in a situation such as that involved in the instant case. A strict application of such rules would result in a classification of nearly all state employes as state officials."

We should be no less reluctant now than then to deprive citizens in government employment of holding public office by a disen-

franchising definition of the term "office." If, as suggested in State ex rel. Childs v. Sutton, 63 Minn. 147, 151, 65 N. W. 262, 263, the constitutional purpose was to avoid, as an evil, the "trafficking in public offices," the public has a broad range of voting judgment as to the legislative candidacy of public employees—a judgment expressed in the original election and subsequent reelection of each of these legislators.

Whether a person holds a disqualifying public office is not to be determined merely by the title of his position. A more appropriate test of whether he holds such an office is whether that person has independent authority under law, either alone or with others of equal authority, to determine public policy or to make a final decision not subject to the supervisory approval or disapproval of another. State ex rel. Anderson v. Erickson, 180 Minn. 246, 230 N. W. 637 (1930), holding that a legislator could not serve as a county commissioner, illustrates this test.

In applying that test to this case, the fact that plaintiff police officers are in the classified, not the unclassified, civil service, although not controlling, is significant. Chapter 12 of the St. Paul City Charter establishes a merit system and assigns all employees to either the classified or the unclassified service, under which, for example, the police chief is unclassified but the deputy police chief or a police lieutenant are classified.[3] The police chief

---

[3] Chapter 12 provides in part, as follows: "Sec. 12.03. *Classified and Unclassified Service.*

"Sec. 12.03.1. *Civil Service Divisions.* The civil service of the City of Saint Paul shall consist of the classified and unclassified service.

"Sec. 12.03.2. *Unclassified Service.* The unclassified service shall comprise:

A. Elected officials.
B. Heads of executive departments.
C. A secretary to the mayor.
D. The city attorney and deputy and assistant city attorneys, subject to Section 5.03.
E. The fire chief and police chief.
F. The city clerk.
G. Members of boards and commissions.

is selected by the mayor from a list of three submitted by a committee or by the city's civil service commission, and the police chief's decisions presumably are final upon the department unless he is dismissed by the mayor. The deputy police chief, like others in the police officer ranks, comes to his position through the classified steps and upon appointment by his police chief. We are not to be understood as empowering the municipality, by making or amending the civil service structure, to control who shall for constitutional purposes be permitted to hold a civil service position and a legislative office, but the civil service structure expresses a governmental unit's informed judgment as to the status and authority of its own employees, which, unless demonstrated to be unreasonable, is entitled to great weight.

The appellation of "police officer" or even the exercise of the "sovereign power" to make an arrest is not, under this analysis, of controlling importance. Other citizens, as the trial court observed, are by statute authorized to make arrests where a police officer is not available to do so. The police officer's duties are, as the trial court found, many and varied duties prescribed by others and performed at the direction and under the supervision of his superiors. The municipality, in assigning plaintiffs' positions to the classified service, gave practical expression to its withholding of the requisite discretionary authority that might constitute their positions a public office within the purview of Minn. Const. art. 4, § 9. We accordingly conclude, in agreement

---

H. Such additional positions as shall be assigned by ordinance to the unclassified service, with the consent of the Civil Service Commission.

"Sec. 12.03.3. *Classified Service.* The classified service shall include all other positions in the city service, including offices hereinafter created and not excluded therefrom. All classified employees shall enjoy the benefits and protection and be subject to the civil service rules and no permanent employee in the classified service shall be discharged except for cause and upon such hearing as the civil service rules prescribe."

with the trial court, that plaintiffs' positions as policemen are not offices within the meaning of art. 4, § 9.

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.