JAMES C. HILL, Circuit Judge:
Donald D. Johnson appeals from a judgment entered on a jury conviction on two counts of willfully failing to file an income tax return, in violation of Title 26, United *1307 States Code, Section 7203. Johnson submitted an IRS form 1040 for 1970, but the form contained no financial information from which his tax liability could be computed. The form disclosed only his name, address, and other basic identifying information. Attached to the form was a statement by Johnson which explained that he was not providing information concerning his tax liability, based on several legal theories challenging the federal tax system. In addition, he attached a check for two hundred dollars, as a “donation.” The 1970 form and attachments were returned to Johnson by the IRS, with an explanation that it was not acceptable as an income tax filing because it did not contain sufficient financial information. The two hundred dollar “donation” was credited to an appropriate suspense account, pending a determination of Johnson’s tax liability. Johnson did not attempt to file a return for 1971. Finding no merit in Johnson’s assignments of error, we affirm.
I.
Initially, Johnson contends that the district court erred in denying his motion to dismiss the indictment on the ground of selective or discriminatory prosecution. He also contends that the district court erred in failing to require the government to produce IRS memoranda, which he alleges would have supported his selective prosecution defense.
Johnson’s motion to dismiss the indictment on the ground of selective or discriminatory prosecution was properly denied by the district court. Generally, the decision whether or not to prosecute in a particular case must be left to the discretion of the prosecutor. The doctrine of separation of powers, inherent in our tripartite constitutional scheme of government, prohibits free judicial interference with the exercise of the discretionary powers of the attorneys of the United States over criminal prosecutions. United States v. Cox, 342 F.2d 167, 171 (5th Cir.) (en banc), cert. denied sub. nom., Cox v. Hauberg, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965). See also United States v. Smith, 523 F.2d 771, 782 (5th Cir. 1975), cert. denied, 429 U.S. 817, 97 S.Ct. 59, 50 L.Ed.2d 76 (1976); United States v. Raven, 500 F.2d 728, 733 (5th Cir. 1974), cert. denied, 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975); United States v. Ream, 491 F.2d 1243, 1246 (5th Cir. 1974). However, “[t]he judiciary has always borne the basic responsibility for protecting individuals against unconstitutional invasions of their rights by all branches of the Government.” United States v. Falk, 479 F.2d 616, 624 (7th Cir. 1965), quoting Stamler v. Willis, 415 F.2d 1365, 1369-70 (7th Cir. 1969), cert. denied sub. nom., Ichord v. Stamler, 399 U.S. 929, 90 S.Ct. 2231, 26 L.Ed.2d 796 (1970). See United States v. Butler, 297 U.S. 1, 62-63, 56 S.Ct. 312, 80 L.Ed. 477 (1936); Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60 (1803); Calder v. Bull, 3 Dallas 386, 1 L.Ed. 648 (1798). See also A. Hamilton, Federalist Paper No. 78, reprinted in Cooke (ed.), The Federalist 521, 524-25 (1961). Therefore, in the rare situation in which the decision to prosecute is so abusive of this discretion as to encroach on constitutionally protected rights, the judiciary must protect against unconstitutional deprivations.
This is not to say that adhering to constitutional principles is the sole province of the judiciary. In our tripartite system of government, the three branches are coequal, and the Constitution is superior to each branch. The supremacy of the Constitution, the supremacy of the “consent of the governed,” requires that each branch adhere to constitutional principles in the exercise of its powers.[1] Ideally, constitutionally, the judiciary measures the other branches’ adherence to constitutional principles only secondarily, after the primary measure of adherence has been taken by the coequal branch itself. Thus, the prosecutor’s decision to prosecute must always be made with constitutional limits on discretion in mind. Then, the judiciary performs *1308 the very limited role of secondarily measuring the primary decision of the prosecutor against constitutional standards. Cf. United States v. Lovasco, 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). Mr. Chief Justice Burger, writing for a unanimous Court, encapsulated this basic aspect of our tripartite government, in United States v. Nixon, 418 U.S. 683, 703, 94 S.Ct. 3090, 3105, 41 L.Ed.2d 1039 (1974):
In the performance of assigned constitutional duties each branch of the Government must initially interpret the Constitution, and the interpretation of its powers by any branch is due great respect from the others. . . . Many decisions of this Court, however, have unequivocally reaffirmed the holding of Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60 (1803), that ‘[i]t is emphatically the province and duty of the judicial department to say what the law is.’ Id., at 177.
The concept that the Constitution limits the prosecutor’s discretion is not new to our jurisprudence. Nearly a century ago, the Supreme Court concluded that the administration of laws “with an evil eye and an unequal hand, so as practically to make unjust and illegal discrimination between persons in similar circumstances” constituted a denial of equal protection of the laws. Yick Wo v. Hopkins, 118 U.S. 356, 373-74, 6 S.Ct. 1064, 1073, 30 L.Ed. 220 (1886). See also Oyier v. Boyles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). This admonition is applicable to the federal government through the equal protection component of the Fifth Amendment due process clause. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). A test for deciding when a decision to prosecute unconstitutionally denies equal protection of the laws was set forth by the United States Court of Appeals for the Second Circuit in United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974):
To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government’s discriminatory selection of him for prosecution has been invidious or in bad faith, i. e., based upon such impermissible considerations, as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as ‘intentional and purposeful discrimination’.
This test has been recognized by this Court. See, e. g., United States v. Murdock, 548 F.2d 599 (5th Cir. 1977); United States v. Smith, supra. But see United States v. Kelly, 556 F.2d 257 (5th Cir. 1977). A majority of the remaining United States Courts of Appeals has also recognized this test. See, e. g., United States v. Ojala, 544 F.2d 940 (8th Cir. 1976); United States v. Legget & Platt, Inc., 542 F.2d 655 (6th Cir. 1976), cert. denied, 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977); United States v. Bourque, 541 F.2d 290 (1st Cir. 1976); United States v. Peskin, 527 F.2d 71 (7th Cir. 1975), cert. denied, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976); United States v. Scott, 521 F.2d 1188 (9th Cir. 1975), cert. denied, 424 U.S. 955, 96 S.Ct. 1431, 47 L.Ed.2d 361 (1976). The Berrios test is now the law in this Court and we apply it here.
We hold Johnson has failed to establish, prima facie, that he was prosecuted for conduct which other persons, similarly situated, were not generally prosecuted. Johnson urged in the district court, and urges on this appeal, that he was singled out for prosecution because he was a prominent figure in the so-called tax protest movement.[2] The simple answer to Johnson’s ar *1309 gument is that the conduct for which he was prosecuted is not ordinarily ignored. Testimony here reflects that known tax reporting violations are not ignored and are, in fact, prosecuted to such an extent as prosecutorial resources allow. The record as a whole bears out this conclusion. The decision whether to proceed by civil or criminal means is made on the basis of several factors: the flagrancy of the violation, the amount involved, the special status of the taxpayer such as a CPA or attorney, the availability of limited investigative personnel, and other factors unique to a given case. Because of limited personnel resources, cases are assigned priorities according to the running of the applicable statute of limitations.
“[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.” Oyler v. Boles, supra 368 U.S. at 456, 82 S.Ct. at 506. See also Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Selection, moreover, is not impermissible solely because it focuses upon those most vocal in their opposition to the law which they are accused of violating. The fact that tax protestors are vigorously prosecuted for violation of the tax laws demonstrates nothing more than a legitimate interest in punishing flagrant violators and deterring violations by others. United States v. Ojala, supra; United States v. Gardiner, 531 F.2d 953 (9th Cir.), cert. denied, 429 U.S. 853, 97 S.Ct. 145, 50 L.Ed.2d 128 (1976); United States v. Scott, supra. See also United States v. Chapman, 559 F.2d 402, 407 (5th Cir. 1977); United States v. Peskin, supra at 85-86. Thus, we hold that Johnson has failed to satisfy his prima facie burden under the first requirement for a constitutional challenge based on selective or discriminatory prosecution. See United States v. Anderson, 574 F.2d 1347 at 1349 n.l (5th Cir. 1978); United States v. Cantu, 557 F.2d 1173,1177-78 (5th Cir. 1977); United States v. Kelly, supra at 264-65.
Having failed to establish, prima facie, that he satisfies the first requirement of the Berrios test, Johnson cannot prevail in his claim of selective prosecution. Therefore, we need not consider his contentions regarding the second requirement. See generally United States v. Buttorff, 572 F.2d 619 (8th Cir. 1978). Even if we did find it necessary to consider his arguments regarding the second requirement, we note that there was uncontroverted testimony that the investigation of Johnson was begun before the IRS was aware of his tax protest activities, which came to light during the investigation. While this does not establish beyond peradventure that the selection of Johnson for prosecution was not based on impermissible factors, Johnson’s failure adequately to rebut that testimony, coupled with his failure to satisfy the first requirement, makes further consideration of the question unnecessary. We, therefore, hold that Johnson’s claim of selective or discriminatory prosecution must fail, under the test we adopt today.
Likewise, we find no merit in Johnson’s claim that he was’improperly denied discovery of internal IRS documents which he contends would have helped him to establish his selective prosecution claim. Since Johnson did not make a prima facie showing that he was singled out for prosecution, he did not establish the materiality of the evidence sought and, consequently, failed to establish his colorable entitlement to discover it. See Fed.R.Crim.P. 16(a)(1)(C); United States v. Murdock, supra at 600, and cases cited. See also United States, v. Kelly, supra at 265. The materials were furnished by the government for in camera inspection by the district court, and the district court judge opened and examined the materials in connection with Johnson’s claim of selective prosecution, before denying the discovery motion and the motion to dismiss the indictment. We have examined the documents ourselves. As Johnson’s attorney conceded, the materials *1310 sought to be produced were not relevant for any other purpose. We conclude that this procedure was sufficient to protect Johnson’s rights. See United States v. Brown, 539 F.2d 467, 470 (5th Cir. 1976).
II.
Johnson contends that the district court erred in the course of instructing the jury concerning his claim of privilege under the Fifth Amendment on his federal income tax return.[3] He reasons, in effect, that a good faith blanket claim of the Fifth Amendment privilege automatically and completely insulates a taxpayer from prosecution for failure to file a return, and the jury should have been so instructed. This reasoning was rejected over fifty years ago when a unanimous Supreme Court, through Mr. Justice Holmes, held a taxpayer “could not draw a conjurer’s circle around the whole matter by his own declaration that to write any word upon the government’s blank would bring him into danger of the law.” United States v. Sullivan, 274 U.S. 259, 264, 47 S.Ct. 607, 608, 71 L.Ed. 1037 (1927). We reject Johnson’s reasoning today.
Johnson errs in his interpretation of his rights under the Fifth Amendment in the context of the income tax laws. He contends that his privilege against self-incrimination permits him to “stand mute” and refuse to cooperate at all in the determination of his tax liability. He argues that he has a privilege, under the Fifth Amendment, to refuse to disclose any income information since he claims that some of his income was derived from illegal activities. Therefore, he would have us conclude that the “return” which he supplied in 1970 was proper in its blanket assertion of the Fifth Amendment. He also seems to justify his complete failure to file in 1971 under the Fifth Amendment. In addition, he argues that he may forever refuse to cooperate with the courts and the IRS in this matter, and his assertion of the privilege cannot ever be tested or questioned. Under well-established precedents, Johnson is wrong in these contentions.
The trilogy of Supreme Court cases Johnson cites do not support his theory. The Supreme Court, in United States v. Sullivan, supra, held that the Fifth Amendment does not protect the recipient of illegal income from prosecution for willfully refusing to make any return under the federal income tax law. The Court indicated that the privilege could be claimed only against specific disclosures on the return. United States v. Knox, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969), established the principle that knowingly filing a false tax return is not a lawful alternative either to filing a truthful return or to filing a return containing specific claims of the Fifth Amendment privilege. The holding in Garner v. United States, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976), in no way overrules these principles or their application to federal income tax returns. In Garner, the Court held that a taxpayer’s privilege against compulsory self-incrimination was not violated when he made incriminating disclosures on his tax returns instead of claiming the privilege, as he had a right to do. While the Court, in Garner, explained that a conviction for “willful failure to file” under 26 U.S.C.A. § 7203 cannot be based on even an erroneous claim of privilege asserted in good faith, the holding does not *1311 lessen or abrogate the fundamental requirements for a “good faith” claim.
The courts which have considered the issue have agreed that filing a “protest return” of the type filed in 1970 by Johnson cannot be justified solely under the Fifth Amendment. See, e. g., United States v. Silkman, 543 F.2d 1218 (8th Cir. 1976), cert. denied, 431 U.S. 919, 97 S.Ct. 2185, 53 L.Ed.2d 230 (1977); United States v. Jordan, supra; United States v. Daly, 481 F.2d 28 (8th Cir.), cert. denied, 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973); United States v. Porth, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970). It follows that failing to file any return, as Johnson did in 1971, cannot be justified solely under the Fifth Amendment. See United States v. Sullivan, supra; United States v. Oliver, 505 F.2d 301 (7th Cir. 1974); Heligman v. United States, 407 F.2d 448 (8th Cir.), cert. denied, 395 U.S. 977, 89 S.Ct. 2129, 23 L.Ed.2d 765 (1969). See generally United States v. Milder, 459 F.2d 801 (8th Cir. 1972); United States v. Walden, 411 F.2d 1109 (4th Cir.), cert. denied, 396 U.S. 931, 90 S.Ct. 271, 24 L.Ed.2d 230 (1969); Hartman v. Switzer, 376 F.Supp. 486 (W.D.Pa.1974); Stoltzfus v. United States, 264 F.Supp. 824 (E.D.Pa.1967), aff’d, 398 F.2d 1002 (3d Cir. 1968), cert. denied, 393 U.S. 1020, 89 S.Ct. 627, 21 L.Ed.2d 565 (1969).
The Fifth Amendment privilege protects the erroneous taxpayer by providing a defense to the prosecution if the jury finds that the claim, though erroneous, was made in good faith. This assumes that a good faith claim of the privilege is not made at one’s peril and that erroneous taxpayers will be afforded the opportunity to reconsider their responses, after proper explanation of the limits of the privilege. Three principles may be distilled from the authorities: (1) the privilege must be claimed specifically in response to particular questions, not merely in a blanket refusal to furnish any information; (2) the claim is to be reviewed by a judicial officer who determines whether the information sought would tend to incriminate; (3) the witness or defendant himself is not the final arbiter of whether or not the information sought would tend to incriminate. See generally Albertson v. SACB, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965); Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); United States v. Sullivan, supra; United States v. Oliver, supra at 306-08; Heligman v. United States, supra. Cf. California v. Byers, 402 U.S. 424, 90 S.Ct. 1352, 25 L.Ed.2d 646 (1971).
Johnson’s defense theory runs afoul of each of these three principles, and his challenge to the jury instruction based on his defense theory must fail. He did not comply with the filing requirements at all. His 1040 form for 1970, which was returned by the IRS, did not contain any financial information and, therefore, was not a proper return under well-established precedent defining “failure to file.” E. g., Florsheim Bros. Dry Goods Co., Ltd. v. United States, 280 U.S. 453, 462, 50 S.Ct. 17, 74 L.Ed. 600 (1930); United States v. Jordan, supra; United States v. Daly, supra; United States v. Porth, supra. He did not even attempt to file a return in 1971. He cannot rely on the aegis of the Fifth Amendment privilege against compulsory self-incrimination, given these complete refusals to comply with the tax laws.
While the source of some of Johnson’s income may have been privileged, assuming that the jury believed his uncorroborated testimony that he had illegal dealings in gold in 1970 and 1971, the amount of his income was not privileged and he was required to pay taxes on it. He could have complied with the tax laws and exercised his Fifth Amendment rights by simply listing his alleged ill-gotten gains in the space provided for “miscellaneous” income on his tax form. The district court’s instruction, if erroneous at all, erred to the extent that the jury was led to believe that Johnson lawfully could have concealed the amount of his illegal income.[4] Of an error in his favor, Johnson cannot be heard to complain.
III.
Johnson also contends that the district court should have instructed the jury *1312 that a good faith reliance upon the advice of counsel would be a defense to the charges. He did not request such a charge. His only requested charge on this subject was to the effect that the jury be allowed to consider, on the issue of willfulness, Johnson’s “reliance on his constitutional rights, his readings on the subject, his attendance at meetings discussing the subject and the professional advice he received.” This proposed charge, though not given, was adequately covered by the district court’s extensive charge on willfulness. The jury was instructed that the failure to file is considered willful if the defendant voluntarily and purposefully failed “to do that which he knew the law required, that is to say, with the purpose to disobey or disregard the law.” The jurors were also told that a defendant could not be found guilty if he believed in good faith that he had done all which the law requires. This charge, taken in its entirety, correctly explained the issue of willfulness and adequately covered Johnson’s request at trial and his challenge here. See United States v. Catano, 553 F.2d 497 (5th Cir. 1977). Cf. United States v. Wellendorf, 574 F.2d 1289 (5th Cir. 1978).
IV.
Finally, Johnson contends that the government was improperly permitted to adduce testimony by an IRS employee to the effect that there was no record of a proper tax return for 1970 and 1971 for Johnson. This argument is thrice fatally flawed. First, Johnson made no objection on the grounds of hearsay during the IRS employee’s testimony; the only defense objection made was to the form of a leading question on redirect examination. Thus, even assuming the testimony was hearsay, the general rule applies: “where there is no objection to hearsay evidence, the jury may consider it for whatever value it may have; such evidence is to be given its natural probative effect as if it were in law admissible.” United States v. Bey, 526 F.2d 851, 855 (5th Cir. 1976). See also, e. g., United States v. Leaman, 546 F.2d 148, 150 (5th Cir.), cert. denied, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977); United States v. Pearson, 508 F.2d 595, 596 (5th Cir. 1975). Second, the testimony was admissible; had there been an objection on the grounds of hearsay, the objection should have been overruled. The availability of the declarant is immaterial to the admissibility of evidence of the nonexistence of a record of a public agency. Fed.R.Evid. 803(10).[5] Johnson has not demonstrated, and we cannot discern, any reason to question the trustworthiness of the records introduced in this case. The witness testified that she personally supervised the search of the records and caused the preparation of the certificates pertaining to them. She further testified that she personally had reviewed the microfilm and was positive the certificates were accurate. Johnson had a full opportunity to cross-examine the witness. Cf. United States v. Peden, 556 F.2d 278 (5th Cir. 1977); United States v. Harris, 551 F.2d 621 (5th Cir. 1977). Third, there could have been no conceivable prejudice to Johnson, since there was no dispute that he had not supplied the IRS with any information concerning his income tax liability for 1970 and 1971. See Fed.R.Crim.P. 52(a); Fed.R. Evid. 103(a)(1); Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).
AFFIRMED.

. Members of all three branches swear or affirm, in their oaths of office, to uphold the Constitution.

. Adherents of the tax protest movement have been singularly unsuccessful in their various and sundry challenges to the federal reserve banking system, federal income tax system, and the federal monetary system, based on novel, and often outlandish, legal arguments. See, e. g., Willis v. Alexander, 575 F.2d 495 (5th Cir. 1978); United States v. Hoopes, 545 F.2d 721 (10th Cir. 1976), cert. denied, 431 U.S. 954, 97 S.Ct. 2675, 53 L.Ed.2d 270 (1977); United States v. Whitesel, 543 F.2d 1176 (6th Cir. 1976), cert. denied, 431 U.S. 967, 97 S.Ct. 2924, *1309 53 L.Ed.2d 1062 (1977); United States v. Jordan, 508 F.2d 750 (7th Cir. 1975); United States v. Porth, 426 F.2d 519 (10th Cir. 1970), cert. denied, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970); Koll v. Wayzata State Bank, 397 F.2d 124 (8th Cir. 1968); Daly v. United States, 393 F.2d 873 (8th Cir. 1968); Home v. Federal Reserve Bank, 344 F.2d 725 (8th Cir. 1965).

. The district court instructed the jury regarding the Fifth Amendment privilege as follows:
You are advised that a taxpayer may not avoid filing a required income tax return by claiming his privilege against self-incrimination unless the taxpayer in good faith believes that if he furnishes the required information on a tax return that the revelation of such information would subject him to incrimination and possible prosecution for violation of criminal laws. The Fifth Amendment privilege does not give a person the right to withhold the required information on the return concerning items the disclosure of which would not incriminate him.
But if the defendant had a good faith belief in his right to assert his privilege not to incriminate himself then the defendant would not be guilty of the crime charged.
Revelation of income from legitimate activities in which no criminal activity was involved would not constitute self-incrimination, but if all or a portion of his income was from criminal activities then the defendant could not be compelled to reveal that portion of his income derived from such criminal activities.

. See note 3, supra.

. Fed.R.Evid. 803 provides in part:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(10) Absence of public record or entry. To prove the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexis-fence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, evidence in the form of a certification in accordance with rule 902, or testimony, that diligent search failed to disclose the record, report, statement or data compilation, or entry.