INCOMPATIBLE OFFICES; COUNTY COMMISSIONER AND CITY ADMINISTRATOR; City administrator position description did not reflect independent and final decision-making authority and therefore did not meet criteria for a public office subject to inherent incompatibility with another public office; local government units are best positioned to assess actual and potential conflicts under their personnel rules and policies.

358a3



The Office of
**Minnesota Attorney General Keith Ellison**
helping people afford their lives and live with dignity, safety, and respect  •  *www.ag.state.mn.us*

October 17, 2023

Brad Johnson
Anoka County Attorney
Government Center
2100 3rd Avenue, Suite 720
Anoka, MN  55303-5025

     **Re:    Request for Opinion**

Dear Mr. Johnson:

Thank you for your letter of September 12, 2023, which requests an opinion from this Office on whether two public offices – county commissioner and city administrator for a city within the county but outside the county commissioner's district – are incompatible.

## BACKGROUND

Your letter indicates an Anoka County commissioner is considering employment as a city administrator in a statutory "Plan A" city[1] located within the county but outside the district represented by the county commissioner. Your letter indicates you find no statutory bar to holding both positions and presents the duties of each position for analysis of a potential conflict.

- The letter describes duties of a county commissioner as overseeing the county's management and administration, including managing the county budget and finances.

- The duties of the city administrator are described in the city's code of ordinances. A partial list of duties of city administrator as presented in your letter is as follows:

    • Directing the administration of city affairs;
    • Enforcing state laws, all city ordinances, and resolutions;
    • Supervising the activities of all city department heads and personnel;

---

[1] Your letter requests that the city not be identified.

> • Attending and participating in all meetings of the city council;
> • Being responsible for the preparation of the city council agenda and recommending to the city council measures as may be deemed necessary [for] the efficient administration of the city;
> • Overseeing the preparation of an annual budget and capital improvement plan;
> • Overseeing all personnel matters of the city in conjunction with policies established by the city council and negotiating terms/conditions of employee labor contracts;
> • Overseeing purchasing activities for the city;
> • Coordinating city programs as directed by the city council . . . including coordinating the activities of the city attorney and city engineer;
> • Informing the city council on matters dealing with the administration of the city;
> • Preparing and submitting to the city council for adoption an administrative code of administrative procedure within the city; and
> • Being bonded, at city expense, through a position or faithful performance bond which will indemnify the city.

These and other provisions of the city code place some limits on the authority of the city administrator. The purchasing authority listed above is limited to routine services, equipment and supplies if the cost does not exceed $5,000. The city administrator position is responsible for negotiating terms and conditions of labor contracts "for presentation to the city council."

Your letter also describes situations in which decisions of the person holding both positions may favor one jurisdiction over the other, such as equalized tax assessments made at the county level, adversarial positions in litigation, and situations where the city is dependent on county resources, such as for law enforcement.

**QUESTIONS PRESENTED**

1. Whether the position of city administrator is a "public office" such that holding dual offices as both an elected county commissioner and appointed city administrator for a city within the same county would result in inherent incompatibility.

2. If the answer to question 1 is "yes," whether acceptance of an offer of employment and appointment as a city administrator by an elected and seated county commissioner would result in a vacancy in the office of county commissioner pursuant to Minn. Stat. § 375.101, subd. 3, or other applicable law, and, if so, when such vacancy would be deemed to be effective.

3. If the answer to question 1 is "no," whether potential conflicts of interest make the positions inherently incompatible by the nature of the structure and duties involved in each role and foreseeable conflicts regardless of whether the role is

achieved by an appointed position or by elected office, and further whether a vacancy would nevertheless result as described in No. 2 above.

## SUMMARY OF CONCLUSION

Applying the criteria from *McCutcheon v. City of St. Paul*, 216 N.W.2d 137, 139 (Minn. 1974), it does not appear that the city administrator position as defined in the city code is a "public office" subject to incompatibility with another public office. Anticipated conflicts of interest do not necessarily disqualify the person from holding both offices, but must be evaluated on a case-by-case basis and are more appropriate for determination at the county and local level.

## ANALYSIS

**Question 1.** First, we agree that no statute appears to prohibit a county commissioner from also serving as a city administrator.[2]

The first question asks whether the two positions are inherently incompatible. We apply the controlling common law authority, which remains *State ex rel. Hilton v. Sword*, 196 N.W. 467 (Minn. 1923). In that case the court held that public offices are incompatible when performance of the essential functions results in "antagonism and a conflict of duty" such that one person cannot discharge "with fidelity and propriety" the duties of both positions. *Id.* Accordingly, our opinions going back over 100 years consider the compatibility of offices by examining the duties of each office imposed by law.

These decisions include several findings that the county commissioner position is incompatible with another position within county or city government. *See, e.g.,* Ops. Atty. Gen. 358a3 (Dec. 26, 1972; director regional hospital district); 358e-9 (Sept. 12, 1973; soil and water conservation district board); 358a3 (Nov. 29, 1976; housing and redevelopment authority board); (Jul. 15, 1954; city council) 358e2 (Jul. 7, 1939; city assessor). In contrast, we found the positions of town clerk and city utilities commissioner to be compatible with the position of county commissioner. Ops. Atty. Gen. 358a3 (Apr. 25, 1967; utilities commissioner); 358e-6 (Sept. 16, 1944; town clerk).

However, in more recent decisions this office has not applied the incompatibility analysis from *Hilton* when the person is acting as an employee or independent contractor rather than holding a public office, the duties of which are set out in statute or ordinance. *See, e.g.,* Letter to John Muhar, Itasca County Attorney (Oct. 30, 2003) (citing Ops. Atty. Gen. 358e-3 (Aug. 18, 1982); 358e3 (July 29, 1997); copy enclosed). In other words, for two positions to be considered inherently incompatible, each must be a public office as opposed to mere employment. The Minnesota Supreme Court explained the appropriate test for the distinction is whether the position reflects "independent authority under the law, either alone or with others of equal authority, to

---

[2] *Compare* Minn. Stat. § 375.09, subd. 1 (county commissioner may not hold other elected office).

determine public policy or to make a final decision not subject to the supervisory approval or disapproval of another." *McCutcheon v. City of St. Paul*, 216 N.W.2d 137, 139 (Minn. 1974).

The duties of a county commission are set out in Chapter 375 of Minnesota statutes, which authorize the commission to make final decisions regarding issues of public policy. *See, e.g.,* Minn. Stat. § 375.18, subds. 1, 2 (authorizing county board to examine and settle accounts, demands and causes of action, issue orders, and manage property and funds). The position of county commissioner, which requires making such decisions with others of equal authority, is therefore a public office.

As to the position of city administrator, the city at issue herein has established it by ordinance as the chief administrative officer of the city, responsible to and selected by the city council. Notably, the city code requires that the position be bonded, which reflects a level of financial authority and responsibility. *See* Op. Atty. Gen. 358g (Sept. 18, 1945) (noting that if the city attorney is not put under bond and does not take oath of office the position is not incompatible with legislative office).

However, the ordinance establishes limits on the city administrator's spending authority and requires oversight of many city administrator duties by the city council. For example, the city administrator *recommends* employment or removal of city department heads and personnel and measures necessary for the efficient administration of the city. The city administrator maintains financial policies within the scope of an approved budget and capital program and oversees personnel matters in conjunction with policies established by the city council.

The position of city administrator as set forth in the municipal code does not appear to meet the criteria of *McCutcheon v. City of St. Paul*, of exercising independent and final decision-making authority. *See also, Jewell Belting Co. v. Village of Bertha*, 97 N.W. 424, 425 (Minn. 1903) (holding merely ministerial functions may be delegated to an officer, but exercise of judgment and discretion must be performed by the village council); Op. Atty. Gen. 471f (Oct. 24, 1961) (holding village council lacks power to delegate authority to village administrative officer). Accordingly, we conclude that the city administrator does not hold a public office that would be inherently incompatible with service as a county commissioner.

**Question 2**. Because the answer to question 1 is not yes, we do not answer the question regarding whether acceptance of an offer of employment for city administrator results in a vacancy in the office of county commissioner.

**Question 3**. Your letter requests further consideration of whether potential conflicts of interest serve to make the two positions incompatible. As reflected in our pre-*McCutcheon* opinions noted above, there is clearly the potential for conflict between the interests of individuals employed by or appointed to positions in cities with service as county commissioner.

However, as we have noted previously, we are not aware of any controlling authority providing that the existence of a conflict or potential conflict of interest disqualifies a person from taking or holding an office. *See* Letter to Mary D. Tietjen, Dec. 13, 2006 (considering incompatibility of superintendent of public works and position on city council; copy enclosed). Instead, a county commissioner employed as city administrator may be disqualified from participation in specific matters in which they are personally interested based on that employment. As we have cited in many prior opinions, conflicts of this nature are determined on a case-by-case basis applying the factors from *Lenz v. Coon Creek Watershed District*, 153 N.W.2d 209 (1967). In that case the court stated:

> The purpose behind the creation of a rule which would disqualify public officials from participating in proceedings in a decision-making capacity when they have a direct interest in its outcome is to insure that their decision will not be an arbitrary reflection of their own selfish interests. There is no settled general rule as to whether such an interest will disqualify an official. Each case must be decided on the basis of the particular facts present. Among the relevant factors that should be considered in making this determination are: (1) the nature of the decision being made; (2) the nature of the pecuniary interest; (3) the number of officials making the decision who are interested; (4) the need, if any, to have interested persons make the decision; and (5) the other means available, if any, such as the opportunity for review, that serve to insure that the officials will not act arbitrarily to further their selfish interests.

*Id.* at 219 (footnote omitted); *see also*, Minn. Stat. § 382.18 (prohibiting county officials from having direct or indirect interest in any contract or business to which the county is a party).

We expect that potential conflicts are matters the city and city administrator will contemplate and discuss as part of the hiring process. It may be that, although the positions are not legally incompatible, it is not practically possible for one person to perform both without actual conflict of interest, including on matters of significance. However, because conflicts must be evaluated based on individual facts and circumstances, and local government units are best positioned to assess actual and potential conflicts under their personnel rules and policies, whether an official has a personal financial interest in a particular matter before the county is beyond the scope of this Office's opinion-rendering authority. *See, e.g.,* Op. Atty. Gen. 90e-5 (May 25, 1966).

Brad Johnson
Anoka County Attorney
October 17, 2023
Page 6


Thank you again for your inquiry, and I hope this opinion is helpful to you.

Sincerely,

KEITH ELLISON
Attorney General

Encl.:  Op. Atty Gen. 90e (May 25, 1966)
        Op. Atty Gen. 471f (Oct. 24, 1961)
        Op. Atty Gen. 358g (Sept. 19, 1945)
        Ltr – 2003 Itasca County (John Muhar)
        Ltr – 2006 City of Mound (Mary Tietjen)


|#5608221-v1

MUNICIPALITIES - CITIES - PUBLIC OFFICERS - HOSPITAL BOARD MEMBERS.
A member of a municipal hospital board is a public officer pro-
hibited from having any financial interest in contracts or purchases
of the board under M.S. § 471.87. Question whether such fi   cial
interest exists is one of fact in the particular case -- re_ation-
ship of husband and wife does not necessarily result in a finding
of financial interest.

May 25, 1966

Honorable Carl A. Jensen
City Attorney
127 East Main Street
Sleepy Eye, Minnesota

Dear Mr. Jensen:

In your letter to Attorney General Robert W. Mattson you

present the following

### FACTS

"The wife of a partner in a local electric
business has been appointed to the Hospital Board.
Our Hospital Board manages the Hospital as provided
in Chapter 2 of our ordinance book referred to as the
City code of the City of Sleepy Eye of which you have
a copy. This ordinance gives the Hospital Board the
power to purchase goods and services. In the past,
this electric firm has been engaged to provide some
electrical goods and services, probably not exceeding
$1,000 in any one year."

You make these

### COMMENTS

"Minnesota Statutes 471.88 makes certain provisions
relative to the governing body of certain governmental
units to contract for goods and services with an interest-
ed officer of the governmental unit. Subd. 8 allows such
interested officers to provide goods and services which
do not exceed $1,000 in any year in a governmental unit
having a population of less than 5,000."

You ask the following

### QUESTIONS

"1. Would Minnesota Statutes 471.88 be applicable
to a member of a Hospital Board appointed by the Council?

"2.  If this statute does not apply to such a situation, is there any prohibition relative to such a Hospital Board obtaining goods and services from a firm in which one of the Hospital Board members has a financial interest?

"3.  Where the official is the wife of a partner in a firm which does business with the Board or government unit and where the wife has no interest in the firm except for the fact that she is a wife of a partner, is there any prohibition relative to the Board doing business with the firm?"

OPINION

1.  M.S. § 471.88 provides in part as follows:

"Subdivision 1.  The governing body of any port authority, seaway port authority, town, school district, village, or city, by unanimous vote, may contract for goods or services with an interested officer of the governmental unit in any of the following cases:

" * * *

"Subd. 8.  Contracts for goods or services when the consideration does not exceed $1,000 in any year and the contracting governmental unit has a population of less than 5,000;"  (Emphasis supplied)

The provisions of M.S. § 471.88, supra, are applicable to "[t]he governing body of any * * * city".  The statute is not applicable to contracts or purchases made by the hospital board of such city.

Your first question is therefore answered in the negative.

2.  M.S. § 471.87 provides as follows:

"Except as authorized in section 471.88, a public officer who is authorized to take part in any manner in making any sale, lease, or contract in his official capacity shall not voluntarily have a personal financial interest in that sale, lease, or contract or personally benefit financially therefrom.  Every public officer who violates this provision is guilty of a gross misdemeanor."  (Emphasis supplied)

Honorable Carl A. Jensen -- 3                    May 25, 1966

A member of a municipal hospital board is a public officer who is prohibited from having any personal financial interest in any contract of the board under M.S. § 471.87, *supra*. Op. Atty. Gen. 90a, July 11, 1957. See also Charter of City of Sleepy Eye, as adopted February 9, 1960, § 12.03. The rule prohibiting such conflict of interest existed at common law. See Stone v. Bevans, 88 Minn. 127, 129, 92 N.W. 520; 13 Dun. Dig. "Municipal Corporations" § 6712, and cases cited therein.

In our opinion a hospital board may not purchase goods and services from a firm in which a board member is financially interested. We therefore answer your second question in the affirmative.

3. The question whether a disqualifying interest exists in a particular case is one of fact which may not be determined by this office. The relationship of husband and wife does not in and of itself result in a finding of the prohibited financial interest.

The subject has been considered by previous opinions of the Attorney General as follows: Ops. Atty. Gen. 90e-5, September 16, 1954; 172a, March 22, 1952; and 90c-2, September 17, 1953.

Copies of opinions cited are enclosed.

Very truly yours,

ROBERT W. MATTSON
Attorney General


WOOD W. REMINGTON
Special Assistant
Attorney General

WWR:jk
Encs.

VILLAGES. Claims, allowance of. Village Employees, employment and discharge. Authority of village council to delegate ~~authority of village council to delegate~~ auditing and allowance of claims against village, and appointment and discharge of village employees to "administrative officer" discussed.

October 24, 1961

Lindquist, Fraser & Magnuson
Attorneys for Village of Brooklyn Center
Midland Bank Building
Minneapolis 1, Minnesota

471 ✗

Gentlemen:

In your letter to Attorney General Walter F. Mondale

you submit the following

FACTS:

"The Village of Brooklyn Center is a village operating under the standard plan of village government. The Village Council has appointed a village administrator whose duties, in general, are supervising the village office and supervising the administration of the various departments in the village; namely, the health, building, water, sewer, police, and engineering departments, and the liquor stores.

"In the resolution establishing the duties of the administrator, the Council provided:

"3. The Administrative Officer is empowered to make the necessary purchases and supplies for all departments of the village, no expenditure, however, to exceed the sum of $500.00, and all expenditures and payments to be subject to the approval of the village council and to be within the limits established by the budget and any other direction by the village council.'

"The Council is presently considering increasing the authority granted under this provision to $1,000.

"In actual practice, many orders are placed and purchases made by the various department heads in the village. The liquor store manager, for example, does all of the ordering of liquor and beer for the store. All of the department heads, however, are responsible to the administrator and the orders and purchases are subject to his approval.

"The actual disbursement of funds in payment for
the purchases made pursuant to the authority delegated
to the administrator is by the Council in accordance
with M.S.A. Sec. 412.271. The Council members are
given the bill received from the claimant together with
the vou cher, which each trustee initials upon ap-
proving the disbursement."

## QUESTION 1

"May the administrator perform purchasing agent
functions as above described?"

## OPINION

1. A governing body of a municipality cannot delegate
its legislative power or its administrative power calling for
judgment and discretion to a committee or otherwise. 13 Dunnell's
Digest, 3d Ed., § 6576; 62 C.J.S., "Municipal Corporations" 316,
§ 154b. This rule has no application to the delegation of minis-
terial functions. Where the performance of the duty involves no
discretion or policy making and the governing body reserves all
discretionary powers, the delegation is one of ministerial power.
State ex rel. Niemi v. Thomas, 223 Minn. 435, 439, 27 N.W. 2d 155.
As pointed out in Rhyne, "Municipal Law" 74, § 4-10, a municipal
governing body may delegate to its subordinate officers powers and
functions which are ministerial or administrative, where there is
a fixed and certain standard or rule which leaves nothing to the
judgment or discretion of the subordinate or at most vests him with
some reasonable discretion in administering the standard or rule.

In the auditing and allowing of claims against the village
the council acts in a quasi-judicial capacity. 13 Dunnell's Digest,
3d Ed., § 6744. Its power and duties in that regard are nondelegable.

In the making of purchases for the village, the resolution attempts to vest in the administrative officer authority comparable to that conferred upon a village manager under Optional Plan B, by M.S. 412.691. Some of the language of the resolution appears to have been borrowed from this section. The difficulty with the resolution, however, is that it does not fix standards or give directions pursuant to which the administrator must act. Limitations as to his authority such as the provision relating to expenditures in excess of $500, and the reference to "necessary purchases" are not rules or standards conforming to the above rules of law. The provision for subsequent approval of all expenditures and payments by the village council and the additional limitations contained in the resolution, although they may furnish adequate safeguards, cannot be substituted for fixed standards and rules. Because the resolution lacks fixed rules or standards pursuant to which the administrative officer must act, we answer this question in the negative.

FACTS:

"The Village Council has also enacted a personnel ordinance delegating to the administrator the authority to appoint and discharge village employees in all positions except those of village engineer, liquor store manager, village attorney, and fire department members. The following standards are outlined in the ordinance to govern the administrator in his hiring policies:

"'Section 17-104. APPOINTMENT PROCEDURE. All appointments in the municipal service shall be made according to merit and fitness.

"A. By Examination. When required by law or the appointing authority, merit and fitness shall be ascertained by written, oral or other examinations and shall relate to those matters which will test fairly the capacity and fitness of the candidate

to discharge efficiently the duties of the position
for which such examinations are held.

*B.  **Without Examination.**  In case of appointment
to positions for which examinations are not re-
quired, the appointing authority may appoint any
person who appears to meet the requirements listed
in the class specifications and whom the appointing
authority deems qualified to perform the duties of
the position.

*C.  **Relationship to Other Village Personnel and
Residence.**  Whenever possible, and with due regard
for merit and fitness, the appointing authority
shall avoid the appointment of any person when
such person is related to any elected or appointed
officer or employee of the Village.

*A person shall be regarded as "related" as used
in this paragraph, if such person is a brother,
sister, spouse, the lineal ancestor or descendent
of the prospective employee, or the husband or wife
of any such brother, sister, ancestor or descendant,
or the first cousin, or the spouse of the first cousin
of the prospective employee.

*Any employee of the Police or Fire Department shall
become a resident of the Village within one year
after his original appointment and shall remain a
resident of this Village thereafter during such
employment.'

"Dismissal is governed by the following principles:

*"**Section 17-127.**  DISMISSAL.  Any officer or employee
subject to the provisions of this ordinance may be dis-
missed from the municipal service by the Village Adminis-
trative officer.  Evidence of the following shall be suf-
ficient cause for dismissal:

*1.  Incompetence or inefficiency in the performance
of his duties.
*2.  Conviction of a criminal offense or a misdemeanor
involving moral turpitude.
*3.  Violation of any lawful or official regulation or
order or failure to obey any lawful direction made and
given by his superior officer where such violation or
failure to obey amounts to an act of insubordination
or a breach of proper discipline or has resulted or
has resulted or reasonably might be expected to result

in loss or injury to the municipality or to the
public.

'4.   Intoxication on duty.

'5.   Contraction of an infectious disease.

'6.   Physical or mental defect which in the judgment
of the appointing authority incapacitates the em-
ployee for the proper performance of the duties of
his position.  An examination by a licensed medical
doctor may be required.

'7.   Wanton use of offensive conduct or language
toward the public or municipal officers or employees.

'8.   Failure to pay or make reasonable provisions for
future payment of just debts due or owing by him caus-
ing thereby annoyance to officers and employees of the
municipality.

'9.   Carelessness and negligence in the handling or
control of municipal property.

'10.  Inducing or attempting to induce an officer or
employee of the municipality to commit an unlawful
act or to act in violation of any lawful and reason-
able official regulation or order.

'11.  Taking any fee, gift or other valuable thing
in the course of his work or in connection with it
from any citizen for his personal use, when such
gift, fee or other thing, is given in the hope or
expectation of receiving a favor or better treatment
than that accorded other citizens.

'12.  Conduct in private life which brings discredit
upon the municipal service.

'13.  Proven dishonesty in the performance of his duties.

'14.  Violations of the provisions of this ordinance.'"

## QUESTION 2.

"May the Council delegate the authority to hire and
fire under the above-described condition?"

## OPINION

"2.   Authority to hire and remove village officers, em-

ployees and agents is vested in the village council.  M.S. 412.111.

As pointed out in Op. Atty. Gen. 358e-9, printed in the 1954 Report

as No. 128, the authority conferred by this section is nondelegable.

See also Op. September 20, 1956, 785a (1956 Report No. 127).  Copies

of these opinions are enclosed.

The council therefore lacks the power to delegate to the administrator authority to hire and discharge village employees, and the provisions of the so-called personnel ordinance which delegate such authority to the administrator  are ineffective for that purpose.  Consistent with the above rules, however, the council may adopt rules and standards for the guidance of the administrator in carrying out all ministerial and administrative functions, including the holding of examinations to determine merit and fitness for appointment and the obtaining and submission of particular evidence in connection with the selection and dismissal of village employees.  But, the ultimate question as to appointment and dismissal are matters for the determination of the village council on the basis stated in M.S. 412.111.

Very truly yours

WALTER F. MONDALE
Attorney General

HARLEY G. SWENSON
Assistant Attorney General

HGS-am
Enc.

MUNICIPALITIES -- CITY ATTORNEY -- MEMBER OF LEGISLATURE --
MAY NOT BE AN OFFICER BUT MAY BE AN EMPLOYEE.

358-9

September 18, 1945

Mr. Gordon C. Peterson
Attorney for City of Columbia Heights
3856 Central Avenue
Minneapolis 13, Minnesota

Dear Sir:

A member of the legislature has no right to act as the official city attorney. He has the right to accept employment by the city as attorney so long as he does not become an officer of the city. You can act as attorney for the city if you are not put under bond and if you do not take the oath of office. You may act as an employee of the city but not as an officer of the city.

I enclose herewith copy of opinion dated August 13, 1940 pertaining to this subject.

Yours very truly

J. A. A. BURNQUIST
Attorney General

RALPH A. STONE
Assistant Attorney General

RAS:MS
Enclosure



# STATE OF MINNESOTA

OFFICE OF THE ATTORNEY GENERAL

**MIKE HATCH**
ATTORNEY GENERAL

October 31, 2003

SUITE 1800
445 MINNESOTA STREET
ST. PAUL, MN 55101-2134
TELEPHONE: (651) 297-2040

John J. Muhar
County Attorney
Itasca County Attorney's Office
123 N.E. 4th Street
Grand Rapids, MN 55744

Dear Mr. Muhar:

Thank you for your correspondence of September 17, 2003.

Your letter and accompanying materials indicate that John Dimich was elected to the Itasca County Board of Commissioners in 2002 and took office on January 2, 2003. In January 2003, the City of Grand Rapids solicited proposals for supplying legal services to the City in three areas: civil representation, criminal prosecution, and labor and employment. Law firms were invited to submit proposals for work in any one or more of those areas.

In July of 2003, Mr. Dimich's firm entered into a contract with the City to provide legal services in the areas of civil representation and criminal prosecution on an "independent contractor" basis. You indicate that it is contemplated that one of Mr. Dimich's partners will be primarily responsible for providing services under the contract, but that Mr. Dimich would also perform some services as needed.

You indicate that there are a number of points of conflict between the county and City, including airport, library and certain zoning matters. The City's agreement with Mr. Dimich's firm provides that conflicts-of-interest will be addressed on a case-by-case basis by the parties.

Based upon this information, you have asked for an opinion as to whether the law firm's relationship with Grand Rapids is incompatible with the Office of County Commissioner such that Mr. Dimich must be deemed to have vacated his Commissioner position. While we are not in a position to provide a definite answer to your question, I can offer the following comments, which I hope you will find helpful.

First, I am not aware of any statutory prohibition against a county commissioner or his/her law firm performing city attorney work. *But, see*, Minn. Stat. § 375.09, subd. 1 (2002) (County commissioner may not hold other *elected office*).

John J. Muhar
October 30, 2003
Page 2

Second, under the common law, one person may not hold two public offices if they are found to be incompatible. In such cases, acceptance of the second office works a vacation of the first. *See State ex rel. Hilton v. Sword*, 157 Minn. 263, 196 N.W. 467 (1923). In *Hilton*, the court stated that public offices will be considered incompatible when the performance of their essential functions results in antagonism and a conflict of duty such that the incumbent of one cannot discharge with fidelity and propriety the full duties of both. Thus, determination of whether two public offices are incompatible requires analysis of the scope of duties imposed by law upon holders of each position.

Third, as noted in the materials submitted with your request, the potential for conflict between the interests of cities and counties generally has led to attorney general's opinions that a number of city offices are incompatible with the office of county commissioner. *See, e.g.,* Op. Atty. Gen. 358-a-3, July 7, 1939 (city assessor); February 8, 1937 (village president). I am not aware of any opinions involving the offices of county commissioner and city attorney. However, a number of prior opinions have determined that the office of county *attorney* is incompatible with the office of city attorney. *See, e.g.,* Op. Atty. Gen. 121A, June 2, 1970, 358-a-1, July 27, 1939.

Fourth, this Office has not, however, generally applied incompatible office prohibitions to instances where a person is acting as an employee or independent contractor rather than holding a formal public office. In particular, prior opinions have stated that, where an attorney has not been formally appointed to an "office" created by law, but performs selective legal services for a city or county on a contracted, hourly-rate basis, the incompatible office doctrine does not apply. See, *e.g.,* Ops. Atty. Gen. 358 e-3, August 18, 1982 and July 29, 1987.

Finally, opinions involving legal services to both cities and counties have noted, however, that the attorneys must be alert to ethical issues that may arise in specific instances.[1] In that regard, Minnesota Rules of Ethical Conduct apply. The rules are under the exclusive jurisdiction of the Minnesota Supreme Court and administered by the Office of Lawyers Professional Responsibility. That office, among other duties, provides advisory opinions on matters pertaining to the Rules of Professional Conduct. *See* Rule 4(c) Minn. RLPR. This Office does not, therefore, undertake to render opinions on application of those Rules. *See, e.g.,* Op. Atty. Gen. 358 e-3, July 27, 1997.

Statutes relating to statutory cities such as those represented by the Dimich firm do not create an "office" of city attorney, as such. Nor does it appear that any of those cities have formally created such an office. Consequently, it does not appear that Mr. Dimich would be

---

[1] In addition, County commissioners along with all public officials need to take care to avoid inappropriate conflicts between personal interests and public responsibilities. *See, e.g.,* Minn. Stat. §§ 382.18, 471-87; *Lenz v. Coon Creek Watershed Dist.*, 278 Minn. 1, 153 N.W.2d 209 (1967).

deemed to have vacated his office as county commissioner as a result of his law partner providing legal services to cities within the county or due to his own legal work as an independent contractor for cities within the county.

I hope this analysis is helpful to you.

Very truly yours,

KENNETH E. RASCHKE, JR.
Assistant Attorney General

(651) 297-1141 (Voice)
(651) 297-1235 (Fax)

AG: #931178-v1



# STATE OF MINNESOTA

OFFICE OF THE ATTORNEY GENERAL

**MIKE HATCH**
ATTORNEY GENERAL

December 13, 2006

SUITE 1800
445 MINNESOTA STREET
ST. PAUL, MN 55101-2134
TELEPHONE: (651) 297-2040

Mary D. Tietjen
Kennedy & Graven, Chartered
470 U.S. Bank Plaza
200 South Sixth Street
Minneapolis, MN 55402

Dear Ms. Tietjen:

You indicate that you are the City Attorney for the City of Mound, Minnesota, and you request an opinion of the Attorney General with respect to the matter discussed below.

You state that at the 2006 city election, Greg Skinner was elected to the City Council of Mound, which is a Plan B statutory city. You further state that Mr. Skinner is currently employed as superintendent of public works ("superintendent") for the City of Mound, and in that capacity, he reports to the Public Works Director and the City Manager. You also state that the superintendent is a full-time, salaried, non-union city employee. The superintendent supervises and directs the day-to-day maintenance activities of 11 employees. In your letter requesting the opinion, you state that the superintendent has no authority over the employees beyond the supervision of daily tasks, nor does the superintendent negotiate wages or salaries for the employees that he supervises.

You indicate that the superintendent position is not appointed or otherwise supervised by the city council. You state that as part of the city budgeting process, the City Manager obtains input from the superintendent regarding items for the proposed budget for the Mound Public Works Department. The Public Works Director and the City Manager are responsible for reviewing and approving all proposed items. You state that the City Manager prepares the final annual budget estimates from each department of the City, subject to the approval of and adoption by the Mound City Council. The City Manager is responsible for presenting the budget to the City Council, although in the past, she has requested that the superintendent participate in that presentation.

You state that the Public Works Director, who is a department head, and the City Manager make and implement policy decisions for the City and the Public Works Department. You further state that the superintendent does not set or implement policy for the City or the Public Works Department. In a follow-up telephone conversation, you were asked whether a written position description for the superintendent's position is available, and you indicated that none exists.

An Equal Opportunity Employer Who Values Diversity                    Printed on 50% recycled paper (15% post consumer content)

In your letter, you also provided information regarding compensation of city employees. You state that as with all non-union employees, the superintendent's salary and benefits are governed by the City's administrative code. You further state that with respect to salary, the administrative code provides: 1) the City Manager is directly responsible to the City Council for the coordination and administration of the salary program; 2) all salary adjustments for employees are based upon the City's pay equity plan accepted by the City Council in 1988; and 3) annual cost of living adjustments for all non-union employees shall be equal to the highest percentage given to union contract personnel each year. The union contract is subject to approval by the City Council. You state that in addition, the administrative code may be amended from time to time by the City Council. Further, salary and cost of living adjustments are applied to employee classifications, not individuals, and employees do not receive merit increases. Under the administrative code, an employee's eligibility for other benefits such as sick time, vacation leave and severance pay is based on objective criteria such as years of service.

Based on these facts, you then asked three questions. Your first question is whether the public works superintendent position is an "office" to which the incompatible offices doctrine applies.

First, as you point out, the City of Mound is a statutory, Plan B city. *See* Minn. Stat. §§ 412.601–412.751 (2006). Under this form of government, known as the "council–manager plan," the council exercises the legislative power of the city and determines all matters of policy. *See* Minn. Stat. § 412.611 (2006) The city manager alone has the authority to hire and fire city employees. *See* Minn. Stat. § 412.651, subd. 3 (2006). ("[t]he city manager shall appoint upon the basis of merit and fitness…all heads of departments, and all subordinate officers and employees….") Thus, the city manager is the head of the administrative branch of government and is responsible to the council for the proper administration of all affairs relating to the city. Minn. Stat. § 412.661(2006). As you state, in a plan B city, the law strictly limits the authority of the city council in administrative matters:

> Neither the council nor any of its members shall dictate the appointment of any person to office or employment by the manager, or in any manner interfere with the manager or prevent the manager from exercising judgment in the appointment of officers and employees….Except for the purpose of inquiry, the council and its members shall deal with and control the administrative service solely through the manager, and neither the council nor any of its members shall give orders to any subordinate of the manager, either publicly or privately.

Minn. Stat. § 412.661 (2006).

Under the council-manager plan, the city council is empowered to "create such departments, divisions and bureaus for the administration of the affairs of the city as may seem necessary, and from time to time may alter their powers and organization." Minn. Stat. § 412.671 (2006). The Mound City Council has established the Public Works Department as a

department of the City and designated the Director of Public Works as the head of the Department. Mound City Code, Chapter II, section 205.05. The City Council has further provided that "the Director of Public Works is responsible to the manager for the organization, planning, administration and coordination of public works of the city. The Director of Public Works shall perform the duties described in the job description for that position and any additional duties assigned by the manager." Mound City Code, Chapter II, section 205.20. The council has not created by ordinance any other positions subordinate to the Director of Public Works.

Second, at common law, public offices are considered to be incompatible, and may not be held by the same person, when the functions of the two are inconsistent such that antagonism would result if the person attempted to perform the duties of both. The determination focuses on whether there is an inherent inconsistency in the duties themselves. *See, e.g., State ex rel. Hilton v. Sword*, 157 Minn. 263, 196 N.W. 467 (1923); *State ex rel. Young v. Hays*, 105 Minn. 399, 117 N.W. 615 (1908); Op. Atty. Gen. 358-E-9, April 5, 1971. Some prior cases and opinions have stated that public positions are incompatible if one is subordinate to the other. *See, e.g., Young v. Hays, Kenney v. Georgen*, 36 Minn. 190, 31 N.W. 210 (1886); Atty. Gen. 358-E-9, April 5, 1971 (council member may not serve as fire chief). However, more recent decisions indicate that, in order for two positions to be considered incompatible offices for the purposes of applying the *Hilton v. Sword* principles, each must be a public office as opposed to mere employment. The distinction was explained by the Minnesota Supreme Court in *McCutcheon v. City of St. Paul*, 298 Minn. 443, 216 N.W.2d 137 (1974):

> There is a distinction between a public official and a public employee which is frequently difficult to trace. The majority of decisions hold that a position is a public office when it is created by law, with duties . . . which involve the exercise of some position of the sovereign power . . . Whether a person holds a disqualifying public office is not to be determined merely by the title of his position.

> A more appropriate test . . . is whether that person has independent authority under the law, either alone or with others of equal authority, to determine public policy or to make a final decision not subject to the supervisory approval or disapproval of another.

*Id.* 216 N.W.2d at 139. Thus, we have previously concluded that an employee in a city utility department was not foreclosed by the incompatibility doctrine from serving on the city council. *See* Letter to Paul Ihle, Thief River Falls City Attorney, dated April 9, 1998.

Third, while the powers and duties of council members in a statutory city are prescribed by statutes, the particular responsibilities of a "superintendent of public works" are not defined in

state law or city ordinance, but are presumably defined by the council or the city manager.[1] Thus, it does not appear that the office of city council member and positions of superintendent of public works are necessarily or inherently incompatible. Rather, the issue turns largely upon fact determinations concerning the duties of the respective positions in question. Consequently, local officials, and not the Attorney General, are in the best position to evaluate whether the position would constitute a public office under the above definitions.

Next, you ask whether the office of superintendent is incompatible with the position of council member in a statutory plan B city if the answer to the first question is "yes."

Since we are not able to answer your first question above, we cannot answer your second question. Because it is not clear whether the position of superintendent of public works, as you have described it, is a "public office" for purposes of the incompatibility doctrine, it necessarily follows that we cannot determine whether the position of superintendent of public works is incompatible with the office of city council member. We believe that the principles regarding the incompatible offices doctrine set forth in the precedents and authorities set forth above will assist you in resolving that question.

Finally, you ask whether apart from the incompatibility doctrine, there a conflict of interest under 471.87 – .89 or 412.311 that would prohibit the public works superintendent from holding the office of council member?

First, while the incompatible office doctrine addresses conflicting public duties, other legal principles deal with conflicts between public responsibilities and the personal interests of public officials. For example, Minnesota Statutes §§ 412.311 and 471.87 (2006) prohibit statutory city council members from having a personal financial interest in contracts of the council. A violation of section 471.87 is a gross misdemeanor. This prohibition has been construed to include contracts of employment. *See, e.g.*, Op. Atty. Gen. 469a-2, Jan. 13, 1961. If the official has a prohibited personal financial interest under these sections, the existence of a violation is not dependent upon whether the official actually participates in approval of a contract. *See, e.g.*, Op. Atty. Gen. 90-E-5, November 13, 1969. Whether an official actually has a personal financial interest in a particular contract is often a factual issue, however, which is beyond the scope of this Office's opinion-rendering authority. *See, e.g.*, Op. Atty. Gen. 90e-5, May 25, 1966. Where a person has a personal interest in a contract that was approved before becoming a council member, continuation of the contract has not been considered a violation. *See, e.g.*, Op. Atty. Gen. 90-a-1, March 30,1961.

Second, to the extent that the union contract, pay equity policy, city administrative code and any other items affecting the terms and conditions of the superintendent's employment were in place prior to his taking office as council member, there was no statutory conflict at the time they were adopted, and the council member could continue to be employed by the city without a

---

[1] *See, e.g.*, Minn. Stat. §§ 412.191, 412.221 and 412.241-412.311(2006).

conflict until the expiration, renewal or amendment of any relevant contracts, codes or policies. However, at such time as the contract is renewed or extended, or the city's pay equity policy or compensation-related provisions of the administrative code are readopted or amended, the council member would be in violation of sections 412.311 and 471.87 unless one of the exceptions contained in section 471.88 applies.

Third, Minn. Stat. § 471.88 (2006) provides for a number of exceptions to this general prohibition whereby a governing body may, by unanimous vote, approve a contract with an interested official. These include "a contract for which competitive bids are not required by law." *Id.*, subd. 5. Generally, cities are not required to seek competitive bids for employment contracts; Minn. Stat. § 471.345 (2006), the Uniform Municipal Contracting Law, does not generally apply to employment contracts. Furthermore, the procedures for negotiating collective bargaining agreements as set forth in the Public Employment Labor Relations Act (Minn. Stat. ch. 179A (2006)) does not involve the concept of public bidding. Therefore, it appears that the exception contained in section 471.88, subd. 5 may be utilized in renewing the relevant employment agreement to avoid a violation of section 412.311 or section 471.87.

Of course, the city's pay equity policy and administrative code are not, strictly speaking, "contracts." However, to the extent that their terms may affect the superintendent's compensation, a cautious approach would be to treat them as contracts with an interested official for purposes of sections 412.311 and 471.87.

Fourth is important to note that a governing body that contracts with an interested member must still comply with several procedural requirements, despite the fact that an exemption exists. *See* Minn. Stat. § 471.88, subd. 1 (requiring a unanimous vote approving the contract);Minn. Stat. § 479.89 (2006) (requiring adoption of a special resolution and the filing of affidavits).

Fifth, in circumstances not specifically addressed by statute, courts have not applied a bright-line rule prohibiting public officials from participating in matters where they have a personal interest. Rather, courts consider such situations on a case-by-case basis, evaluating the circumstances in light of several factors. In *Lenz v. Coon Creek Watershed Dist.*, 278 Minn. 1, 153 N.W.2d 209 (1967), the Court said:

> The purpose behind the creation of a rule which would disqualify public officials from participating in proceedings in a decision-making capacity when they have a direct interest in its outcome is to insure that their decision will not be an arbitrary reflection of their own selfish interests. There is no settled general rule as to whether such an interest will disqualify an official. Each case must be decided on the basis of the particular facts present. Among the relevant factors that should be considered in making this determination are: (1) The nature of the decision being made; (2) the nature of the pecuniary interest; (3) the number of officials making the decision who are interested; (4) the need, if any, to have interested persons make the decision; and (5) the other means available, if any, such as the

opportunity for review, that serve to insure that the officials will not act arbitrarily to further their selfish interests.

*Id.* at 15, 153 N.W.2d at 219 (footnote omitted). *See also E.T.O., Inc. v. Town of Marion,* 375 N.W.2d 815 (Minn. 1985).

Sixth, we are not aware of any controlling authority providing that the existence of a conflict or potential conflict of interest categorically excludes a person from taking an office. Instead, when such a conflict arises, the conflicted person should take appropriate corrective action. Applying the five factors set forth in the *Lenz* decision, there may well be circumstances in which the council member will be disqualified from participating in council meetings. Each occasion will need to be separately evaluated as it arises. *Cf. 1989 Street Improvement Program v. Denmark Twp.,* 483 N.W.2d 508 (Minn. App. 1992); *Rowell v. Board of Adjustment,* 446 N.W.2d 917 (Minn. App. 1989), *review denied* Dec. 15, 1989; *E.T.O., Inc. v. Town of Marian,* 375 N.W.2d 815 (Minn. 1985).

Finally, apart from the conflict of interest question addressed above, for a Plan B city such as Mound, there is the statutory prohibition contained in Minn. Stat. § 412.661 (2006), which states as follows:

Except for the purpose of inquiry, the council and its members shall deal with and control the administrative service solely through the manager, and neither the council nor any of its members shall give orders to any subordinate of the manager, either publicly or privately.

We are not aware of any previous cases or opinions that address the scope of this prohibition. It could be argued that, to the extent the duties of the Superintendent of Public Works include directing other city employees, such actions would be contrary to law if performed by a member of the council. However, it could also be argued that the purpose of the statutory prohibition is to prevent the council or its members from circumventing the authority of the city manager and attempting directly to control the work of city employees. Thus, the prohibition might not be violated if the person directed that actions of city employees not as a council member, but as a subordinate of the city manager implementing the manager's policies and directives. Since the manager has ultimate supervisory authority over all city employees including the superintendent, she is presumably well situated to assure that her authority is not compromised.

We hope the foregoing analysis is responsive to your questions. For your convenience, we have enclosed copies of the cited cases and opinions.

Very truly yours,

KENNETH E. RASCHKE, JR.
GREGORY P. HUWE
Assistant Attorneys General

(651) 297-1223 (Voice)
(651) 297-1235 (Fax)

Enclosures

cc:     Mayor-elect Mark Hanus

AG: #1711020-v1